

1  KEKER & VAN NEST, LLP
   ELLIOT R. PETERS - #158708
2  JENNIFER A. HUBER - #250143
   710 Sansome Street
3  San Francisco, California 94111-1704
   Telephone: (415) 391-5400
4  Facsimile: (415) 397-7188
   epeters@kvn.com
5  jhuber@kvn.com

6  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
   MARTIN FLUMENBAUM (application for admission *pro hac vice* pending)
7  MARC FALCONE (application for admission *pro hac vice* pending)
   1285 Avenue of the Americas
8  New York, New York 10019-6064
   Telephone: (212) 373-3000
9  Facsimile: (212) 757-3990

10 Attorneys for Plaintiff
   ARTEMIS IV, LLC

11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                                              CV 08          3528

16 ARTEMIS IV, LLC,                      Case No.

17               Plaintiff,              **COMPLAINT**

18      v.                               **DEMAND FOR JURY TRIAL**

19 ORGANIC BOUQUET, INC., ORGANIC
   STYLE, LTD., GERALD PROLMAN,
20 CHRISTOPHER GREY POWELL, ADRIAN
   DAVID PRESLAND BELLAMY, JOHN
21 BRADY, and JOHN ROBERT NEVADO,

22               Defendants.

23

24

25

26

27

28

421485.03                    COMPLAINT
                         CASE NO. _____

## Nature of the Action

1.    This is an action for securities fraud under the laws of the State of California and the United States, as well as for breach of fiduciary duty, breach of contract, fraudulent conveyance, and conspiring in and aiding and abetting an unlawful scheme to deprive Plaintiff Artemis IV, LLC ("Artemis IV") of the benefit of its investments in Defendant Organic Style, Ltd. ("Organic Style").

2.    Defendants obtained an investment of almost $10,000,000 from Artemis IV under false pretenses and misappropriated those funds. Defendants induced Artemis IV to invest in Organic Style by representing that Organic Style would use the funds to purchase businesses with positive cash flow and obtain additional debt and equity financing for the same purpose. Instead, Defendants used the money loaned by Artemis IV, and have used most of Organic Style's available cash, to fund the operations of other companies, including Defendant Organic Bouquet. At least one Director of Organic Style, Defendant Gerald Prolman, held substantial interest in Organic Bouquet.

3.    As a result of Defendants' conduct, the terms of the Organic Style convertible notes purchased by Artemis IV (the "Convertible Notes") have been materially breached; the value of Organic Style has already been seriously reduced and is further threatened; Defendants have sacrificed the business of Organic Style by transferring away the necessary capital that was invested to fund Organic Style's purported business plan; and, upon information and belief, as a result of the wrongful transfers of funds, Organic Style is either insolvent or in the zone of insolvency, with no prospects for making interest and principal payments on the Convertible Notes.

4.    Upon information and belief, Defendants' misconduct has been motivated not only by their desire to protect the personal interests of certain Organic Style Directors in the companies to which Organic Style diverted funds, but also to subvert the rights of Artemis IV with respect to the Convertible Notes. Part of the business plan of Organic Style was to acquire Organic Bouquet through a subsidiary of Organic Style. Under the terms of the Convertible Notes, Artemis IV had the right, under certain circumstances, to convert its interests in Organic

1  Style into equity in the combined company.  Defendants' largest block of transfers from Organic

2  Style—totaling approximately $6,600,000 to Organic Bouquet—was undocumented and made

3  without any apparent consideration or, for that matter, any defined terms whatsoever—not even

4  an interest rate or maturity date.  Upon information and belief, Defendants intended to hide these

5  transfers and cause Organic Style to acquire Organic Bouquet at an inflated price—i.e., a price

6  that did not account for the undocumented debt that Organic Bouquet owed Organic Style.  The

7  result of this scheme, if successful, would have been to reduce drastically the ownership share of

8  Artemis IV upon any conversion of the Convertible Notes.

9  <div align="center">**Jurisdiction and Venue**</div>

10       5.     This action arises, in part, under the laws of the United States, including

11  Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and the rules

12  promulgated thereunder by the Securities and Exchange Commission (the "SEC").  This Court

13  has original and exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27

14  of the Exchange Act, 15 U.S.C. § 78aa.  This Court has supplemental jurisdiction pursuant to 28

15  U.S.C. § 1367(a) for all claims asserted herein not arising under the laws of the United States.

16       6.     In addition, this Court has jurisdiction over all claims asserted herein under

17  28 U.S.C. §§ 1332 and 1376(b).  The controversy is between a New York citizen and citizens of

18  different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

19       7.     Venue is proper pursuant to 28 U.S.C. § 1391(a)-(b) and 15 U.S.C. § 78aa.  A

20  substantial part of the events or omissions giving rise to the claims against Defendants occurred

21  in this District, Defendants have transacted business in this District, and one or more Defendants

22  reside in this District.

23  <div align="center">**The Parties**</div>

24       8.     Plaintiff Artemis IV LLC ("Artemis IV") is a limited liability company organized

25  under the laws of the State of Delaware with its principal place of business in Katonah,

26  New York.

27       9.     Defendant Organic Bouquet, Inc. ("Organic Bouquet") is a corporation

28  incorporated under the laws of the State of California with headquarters in San Rafael,

<div align="center">2</div>
<div align="center">COMPLAINT</div>
<div align="center">CASE NO. _____</div>

421485.03

1    California.

2       10.     Defendant Organic Style Ltd. ("Organic Style") is a corporation incorporated

3    under the laws of England and Wales, registration number 5777531, with its principal place of

4    business in London, United Kingdom. Organic Style became a registered corporation in the

5    United Kingdom on April 11, 2006, with a Board of Directors that was nearly identical to the

6    Board of Organic Bouquet.

7       11.     Defendant Gerald Prolman ("Prolman") is, and at relevant times was, a Director

8    of both Organic Style and Organic Bouquet. Prolman is also the controlling shareholder of

9    Organic Bouquet and Organic Style. Upon information and belief, Prolman resides in or around

10   Novato, California.

11      12.     Defendant John Brady ("Brady") is, and at relevant times was, a Director of both

12   Organic Style and Organic Bouquet. Upon information and belief, Brady resides in

13   New Hampshire. At relevant times, Brady served on the Audit Committee of the Organic Style

14   Board of Directors.

15      13.     Defendant Christopher Grey Powell ("Powell") is, and at relevant times was, a

16   Director of both Organic Style and Organic Bouquet. Upon information and belief, Powell

17   resides in the United Kingdom.

18      14.     Defendant Adrian David Presland Bellamy ("Bellamy") is, and at relevant times

19   was, a Director of both Organic Style and Organic Bouquet. Upon information and belief,

20   Bellamy resides in or around Hillsborough, California.

21      15.     Defendant John Robert Nevado ("Nevado") is, and at relevant times was, a

22   Director of Organic Style. Upon information and belief, he is an executive of, and has a

23   significant economic interest in, Hamlet Financial Corp. ("Hamlet"), a company incorporated in

24   the British Virgin Islands. Hamlet is a substantial shareholder in Organic Style. Upon

25   information and belief, Nevado resides in Spain. At relevant times, Nevado was a member of the

26   Audit Committee of the Board of Directors of Organic Style.

27      16.     Defendants Organic Style, Organic Bouquet, Prolman, Bellamy, Brady, Nevado

28   and Powell are herein collectively referred to as the "Defendants." Defendants Prolman,

421485.03

1   Bellamy, Brady, Nevado and Powell are herein collectively referred to as the "Director

2   Defendants."

3                                   **Factual Allegations**

4       17.   In August or September of 2007, Gerald Prolman, the founder of Organic

5   Bouquet and, at the time, a Director of Organic Bouquet, its Chief Executive Officer and

6   controlling shareholder, approached Artemis IV in California seeking investment capital for a

7   new company formed by Organic Bouquet. This newly formed company for which Prolman

8   sought financing was Defendant Organic Style.

9       18.   In January 2007, Defendants Organic Style and Organic Bouquet entered into an

10  agreement whereby Organic Style authorized Organic Bouquet and its directors, officers and

11  representatives to act on behalf of Organic Style in preparing Organic Style for a planned IPO on

12  the Alternative Investment Market of the London Stock Exchange (the "AIM") and in related

13  matters. Preparation for Organic Style's planned AIM IPO included the offering of Convertible

14  Notes purchased by Artemis IV, which would allow the Director Defendants, as is required for

15  the IPO, to attest to AIM that Organic Style had working capital sufficient for 12 months of post-

16  admission operation. With respect to their dealings with Artemis IV, Prolman, the other Director

17  Defendants, and Organic Bouquet at all times acted for and on behalf of themselves and Organic

18  Style, and Organic Style acted through Organic Bouquet and the Director Defendants.

19      19.   Prolman founded Organic Bouquet in 2001 to sell organically grown flowers over

20  the Internet. He is the controlling shareholder of Organic Bouquet, and a Director of both

21  Organic Bouquet and Organic Style. Defendant Bellamy also, at all relevant times, was a

22  director of both Organic Bouquet and Organic Style, and, on information and belief, served as

23  Chair of the Organic Bouquet Board of Directors and on the Organic Bouquet Audit Committee.

24  Defendant Nevado was, at all relevant times, until December 12, 2007, a Director of Organic

25  Style and, upon information and belief, held an economic interest in Hamlet.

26      20.   During (i) an initial pitch to Artemis IV in a telephone conversation with

27  Artemis IV President Ralph Crevoshay, (ii) a subsequent meeting with Crevoshay in Prolman's

28  office in San Rafael, California in September 2007, and (iii) in several discussions with

COMPLAINT
CASE NO. _____

1   Artemis IV Member Manager Kevin Brine, Prolman told Artemis IV that Organic Bouquet had

2   strong growth prospects, and that Organic Bouquet needed to raise additional capital to fund its

3   business plan and operations.  In order to raise additional capital, Prolman said, Organic Bouquet

4   had developed a four-step plan.

5       21.    The first step in the plan that Prolman described was the formation of Organic

6   Style, an English company, with a business plan to acquire companies with positive cash flow

7   and lines of business complementary to the business of Organic Bouquet (the "Target

8   Companies").  Prolman emphasized that Organic Style would use the capital that Defendants

9   sought to raise to become a diversified company, with numerous lines of business—including

10  organic or ecologically-friendly gourmet foods and gift baskets, bed and bath products, apparel,

11  pet gifts, body care, and gardening products, among others—by making strategic acquisitions of

12  companies with positive cash flow.

13      22.    The second step in the plan was to raise capital to fund the business plan of

14  Organic Style— i.e., to finance the acquisitions of the Target Companies.  This fundraising step

15  had three components: (i) an offering of convertible notes (the "Convertible Notes");

16  (ii) obtaining a listing and making an initial public offering ("IPO") on the AIM, and

17  (iii) obtaining a pre-IPO bridge loan to fund transaction expenses and IPO costs.  Prolman told

18  Artemis IV that Defendants planned to raise £7.5 million through the sale of Convertible Notes

19  and that this financing would fund the cash portion of the Target Company purchase prices and

20  ensure a technical listing on the AIM for the IPO.  Prolman represented that the IPO would bring

21  in an additional £7.5 million of financing for Organic Style.

22      23.    The third step in the plan was to acquire the Target Companies.  In order to

23  induce Artemis IV to purchase the Convertible Notes, Prolman told Artemis IV that Organic

24  Bouquet intended to make Organic Style the world's largest on-line retailer of ecologically-

25  friendly products by acquiring existing online retailers.  Prolman identified five Target

26  Companies that Organic Style would acquire for a total purchase price of approximately $31

27  million.

28      24.    The final step in the Organic Bouquet plan was to merge Organic Bouquet into a

1  wholly-owned subsidiary of Organic Style, and then use the positive cash flow generated by the

2  acquired Target Companies, in part, to finance the growth of Organic Bouquet.

3      25.    Prolman represented that, prior to the final step of the four-step plan, Organic

4  Style would use the proceeds of the Convertible Note offering (the "Note Offering") to finance

5  the acquisitions of Target Companies by Organic Style.  Prolman gave no indication that

6  Defendants would conspire to transfer proceeds from the Note Offering—or any other funds—

7  from Organic Style to Organic Bouquet in order to finance the operations of Organic Bouquet

8  before the actual merger of Organic Bouquet into Organic Style.

9      26.    During each of the discussions in or around September 2007 between Crevoshay

10  or Brine, on the one hand, and Prolman, on the other hand—and also during a discussion

11  between Brine and defendant John Brady, a Director of both Organic Bouquet and Organic

12  Style—it was stated or suggested that the proceeds of the Note Offering would be used by

13  Organic Style to finance its acquisitions of Target Companies with positive cash flow.

14  Moreover, although it was always understood that, upon completion of the merger of Organic

15  Bouquet into Organic Style, funds generated by the operations of the acquired Target Companies

16  would be used to finance the planned growth of Organic Bouquet, no Defendant ever gave any

17  indication to Artemis IV that Organic Style would finance the operations of other companies, or

18  the operations of Organic Bouquet, prior to the merger.

19      27.    In sum, Defendants and/or their representatives represented that money loaned to

20  Organic Style by Artemis IV would be used to create a strong, cash-flow positive company—a

21  company against which the holders of Organic Style Convertible Notes would have recourse for

22  repayment of the loans and in which the Convertible Noteholders would have an opportunity to

23  convert their interests to equity.  Defendants did not disclose that they intended, even as they

24  were soliciting Artemis IV to purchase the Convertible Notes, to sacrifice the business plan of

25  Organic Style and divert large sums of capital from Organic Style to Organic Bouquet.

26      28.    In addition, the form of Convertible Note presented to Artemis IV in connection

27  with its purchase of Convertible Notes and the letter agreement to purchase the Convertible

28  Notes (the "Subscription Letter"), expressly provided that Organic Style would use proceeds

6

COMPLAINT
CASE NO. _____

1  obtained from the sale of the Convertible Notes to fund "the Company's [Organic Style's]

2  working capital including, without limitation, transaction expenses." The form of Convertible

3  Notes gave no indication that proceeds from the Note Offering would be used to bail-out Organic

4  Bouquet and fund other companies instead of for the acquisition of Target Companies and

5  working capital for Organic Style.

6      29.    In reliance upon Defendants' representations concerning the use of proceeds

7  obtained through the Convertible Note Offering and the express terms of the form of Convertible

8  Notes, Artemis IV purchased £2,500,000 of an offering of Organic Style Convertible Notes in

9  2007 (the "2007 Convertible Notes") and £2,250,000 of a Convertible Note offering in 2008 (the

10  "2008 Convertible Notes") as follows:

| Offering | Artemis IV Purchase Date | Amount of Artemis IV Purchase |
|---|---|---|
| 2007 Convertible Notes | September 24, 2007 | £1,500,000 |
| 2007 Convertible Notes | October 8, 2007 | £1,000,000 |
| 2008 Convertible Notes | February 19, 2008 | £500,000 |
| 2008 Convertible Notes | March 17, 2008 | £1,750,000 |

18     30.    Upon information and belief, even as Defendants represented that they would use

19  the proceeds from the Convertible Note offering to finance acquisitions of the Target Companies

20  and the working capital of Organic Style only, and although the form of Convertible Notes

21  confirmed that proceeds obtained from the sale of the Convertible Notes would be used only for

22  the working capital of Organic Style, Defendants were, in fact, planning to transfer proceeds

23  from the Convertible Note offering and other sources of Organic Style funds to Organic Bouquet

24  to finance the working capital needs of what had become a failing enterprise.

25     31.    In 2008, Artemis IV, after making the last of its 2008 Convertible Note purchases,

26  discovered that Organic Style had diverted roughly $6,600,000 to Organic Bouquet and diverted

27  additional funds of $1,500,000 to Hamlet and $1,350,000 to Flortec, S.A, a company registered

28  on the Island of Guernsey.

7
COMPLAINT
CASE NO. _____

421485.03

32.    Moreover, although the Director Defendants, as Directors of both Organic Style and Organic Bouquet, had conflicting interests with respect to transactions between the companies, and although Prolman, in particular, had conflicting interests as a Director of both entities and as a major shareholder of Organic Bouquet, the transfers of nearly $6,600,000 from Organic Style to Organic Bouquet have never been documented, and, upon information and belief, were made for less than fair value and without any definite terms, including, for example, a maturity date or interest rate.

33.    To date, the funds have not been returned to Organic Style, and, upon information and belief, Organic Bouquet is incapable of making repayment. Organic Style has failed to obtain a listing on the AIM and the IPO has not gone forward.

34.    As Artemis IV recently discovered, Organic Bouquet had been consuming cash at a rate that could not be sustained pending its planned merger into Organic Style. If Organic Bouquet were forced into bankruptcy prior to the proposed merger, Prolman and the other original shareholders would lose their investment. Thus, on information and belief, Defendants caused the undocumented transfers of funds from Organic Style to Organic Bouquet to bail out Organic Bouquet without obtaining any consideration in exchange for Organic Style.

35.    Upon information and belief, Defendants caused the transfer of funds from Organic Style to Organic Bouquet also as part of a scheme to inflate the value of Organic Bouquet, and thus inflate the value of the prospective combined companies, in an effort to preclude Artemis IV from acquiring control of Organic Style through the exercise of its rights under the Convertible Notes. Defendants understood that Artemis IV purchased the Convertible Notes in part because of the opportunity to convert its investment from debt to equity. Defendants also knew that given the true capitalization of Organic Style, it was likely that Artemis IV would acquire control of Organic Style upon the exercise of its conversion rights. Upon information and belief, Defendants sought to block Artemis IV from taking control by making the capitalization of the prospective combined company appear greater than it was.

36.    On information and belief, the Director Defendants at a minimum approved or acquiesced in the misrepresentations made to Artemis IV and the transfers of Organic Style

8

1   capital to Organic Bouquet, Hamlet and Flortec, S.A.

2       37.    In sum, Organic Style and the Directors Defendants, pursuant to a plan pre-dating

3   the Artemis IV investments, used funds provided by Artemis IV and earmarked to finance the

4   Target Company acquisitions and working capital needs of Organic Style to, instead, try to bail

5   out Organic Bouquet and defraud Artemis IV with respect to its conversion rights under the

6   Convertible Notes.

7       38.    The transfers from Organic Style to Organic Bouquet, Hamlet and Flortec, S.A.,

8   totaling approximately $9,450,000, rendered Organic Style unable to pay its debts to Artemis IV.

9       39.    The form of Convertible Notes provides that the Convertible Notes are subject to

10  redemption 20 days after the Investor Majority gives Organic Style written notice of a material

11  breach of the terms of the Convertible Notes by Organic Style if said material breach has not

12  been cured.  The form of Convertible Notes defines "Investor Majority" to mean "the holders of

13  51% of the Notes outstanding," which is Artemis IV.

14      40.    In addition, the Convertible Notes are subject to immediate redemption upon the

15  occurrence of any "Event of Default," which includes a determination by the Investor Majority—

16  i.e., Artemis IV—that "the value of the Company's [Organic Style's] assets is seriously reduced

17  or threatened."

18      41.    On July 23, 2008, Artemis IV served notice (the "Redemption Notice") on

19  Organic Style and those Director Defendants who are currently Directors of Organic Style,

20  declaring two grounds for redemption of the Convertible Notes:  (i) the determination by

21  Artemis IV that that the value of Organic Style has been seriously reduced and threatened since

22  the Convertible Notes were issued, due to, among other things, the unlawful transfer of funds

23  from Organic Style to Organic Bouquet, and (ii) the willful and material breach of the terms of

24  the Convertible Notes, consisting of Organic Style's misuse of the proceeds of the Convertible

25  Note Offering.  The Redemption Notice is attached hereto as Exhibit 1.

26      42.    All principal and interest accrued on the Convertible Notes became immediately

27  due to Artemis IV on July 23, 2008.  To date, no payment has been made.

28

421485.03

## ALLEGATIONS SUPPORTING INFERENCE OF FRAUDULENT INTENT

43.    At the same time that certain Defendants were inducing Artemis IV to purchase four tranches of Organic Style Convertible Notes by representing that Organic Style would use the proceeds from the Note Offering to finance acquisitions of companies with positive cash flow, Defendants knew that they intended to use the proceeds of the Note Offering to finance the operations of Organic Bouquet, which was generating substantial operating losses.

44.    On August 29, 2007, Defendants Prolman, Bellamy, Brady, Nevado, and Powell participated, as Organic Style Directors, in a telephonic meeting of the Organic Style Board.  On that date, Defendants Prolman, Bellamy, Brady, and Powell were also Directors of Organic Bouquet, and Defendant Prolman held substantial financial interests in Organic Bouquet.  The minutes of this telephonic meeting indicate that during the first seven months of 2007, Organic Bouquet generated an operating loss of $1.124 million, which meant that Organic Bouquet was losing money at a rate 8.8 percent faster than had been budgeted for 2007.  The minutes further indicate that, at least by August 29, 2007, Organic Style (which had no operating companies at the time) and the other Defendants regarded the Convertible Notes, described by Organic Style in the minutes as "Bridge" financing, as a critical source of financing for Organic Bouquet.  Indeed, the minutes reflect that during a financial presentation by Defendant Powell, it was noted that "cash management" was "the key financial focus" for Organic Bouquet pending its receipt of proceeds from the *Organic Style* Note Offering.

45.    Additionally, the transfers from Organic Style to Organic Bouquet were so large and formed such a substantial percentage of Organic Style's total available capital, that all of the Director Defendants must have either known of them or, at a minimum, were highly reckless in not knowing of them.  From June 2007 through February 2008, Organic Style raised capital of approximately $8.76 million, of which about $5.5 million (roughly 62%) was transferred to Organic Bouquet and Hamlet.  It is hard to imagine how the Director Defendants would not have known about these and subsequent transfers.

46.    Similarly, the Convertible Note Offering was so large, and formed such a significant and indispensable part of Organic Style's financing plans, that all of the Director

421485.03

1    Defendants must have known of them and reviewed the relevant documentation, or were reckless

2    in not doing so.

3        47.    Moreover, at the latest, prior to the Artemis IV purchase of Organic Style

4    Convertible Notes in March of 2008, Organic Style had already transferred almost $4.5 million

5    to Organic Bouquet without any loan documentation or disclosure to Artemis IV, despite

6    representations that proceeds from the Note Offering would be used to acquire the cash-flow

7    positive Target Companies and fund the operations of Organic Style.  In December 2007, the

8    same month that Defendant Nevado resigned from the Organic Style Board, Organic Style

9    advanced a loan in excess of $1,000,000 to Hamlet.

10                        **FIRST CLAIM FOR RELIEF**
                 **Securities Fraud—Exchange Act §10(b) and SEC Rule 10b-5**
11           **(Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)**

12        48.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

13    allegations in Paragraphs 1 through 47 above.

14        49.    Defendants carried out plans, schemes and courses of conduct that were intended

15    to and did induce Artemis IV to purchase Convertible Notes of Organic Style by misrepresenting

16    the business plan of Organic Style and misrepresenting the intended use of proceeds from the

17    Convertible Note Offering.

18        50.    Defendants, as a group and individually (i) employed devices, schemes, and

19    artifices to defraud; (ii) made untrue statements of material fact and omitted to state material

20    facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a

21    course of business that operated as a fraud and deceit upon Plaintiff, all in violation of Section

22    10(b) of the Exchange Act and SEC Rule 10b-5.

23        51.    Defendants, individually and in concert, directly or indirectly engaged and

24    participated in this course of conduct, in connection with the purchase and sale of securities, to

25    deceive Artemis IV as to the business plan of Organic Style and the intended use of proceeds

26    from the Convertible Note Offering, and to transfer such proceeds from Organic Style to Organic

27    Bouquet.

28        52.    Defendants' misrepresentations and omissions were made knowingly and with an

421485.03

1    intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

2    use of proceeds from the Convertible Note Offering.

3        53.    Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

4    in making its decision to purchase the Convertible Notes.

5        54.    As a direct and proximate result of the misrepresentations and omissions and the

6    fraudulent schemes alleged herein, Artemis IV has been damaged in an amount not less than

7    approximately $10,000,000, plus accrued interest.

8                  **SECOND CLAIM FOR RELIEF**
               **Control Person Liability—Exchange Act § 20(a)**

9                      **(All Defendants)**

10       55.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11    allegations in Paragraphs 1 through 54 above.

12       56.    At all relevant times, Organic Bouquet controlled Organic Style and each of the

13    Director Defendants controlled Organic Bouquet and/or Organic Style within the meaning of

14    Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, their

15    ownership and contractual rights, their access to and review of the relevant documents, their

16    participation in and/or awareness of the Convertible Note Offering and the operations and

17    financial condition of Organic Style and Organic Bouquet, Defendants had the power to

18    influence and control and did influence and control, directly or indirectly, the decision-making of

19    Organic Style and/or Organic Bouquet.

20       57.    Upon information and belief, Defendants all had unlimited access to information

21    concerning the operations of Organic Style and Organic Bouquet, the financial condition of both

22    companies and the improper and undisclosed diversion of funds alleged herein, and had the

23    ability to prevent the schemes alleged herein from occurring

24       58.    By virtue of their positions as controlling persons, Defendants are liable pursuant

25    to Section 20(a) of the Exchange Act for the violations of Section 10(b) of the Exchange Act and

26    SEC Rule 10b-5 alleged herein.

27       59.    As a direct and proximate result of the Defendants' wrongful conduct, Artemis IV

28    has been damaged in connection with the misrepresentations and omissions alleged herein in an

421485.03

1 | amount not less than approximately $10,000,000 plus accrued interest.

2 |
### THIRD CLAIM FOR RELIEF
### Securities Fraud—Cal. Corp. Code § 25401
3 | **(Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)**

4 |     60.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

5 | allegations in Paragraphs 1 through 59 above.

6 |     61.    Defendants induced Artemis IV to purchase Convertible Notes of Organic Style

7 | by misrepresenting the business plan of Organic Style and misrepresenting the intended use of

8 | proceeds from the Convertible Note Offering.

9 |     62.    Defendants, as a group and individually, offered to sell and did sell securities in

10 | California by means of written and oral communication that included untrue statements of a

11 | material fact and omitted to state material facts necessary in order to make the statements made,

12 | in the light of the circumstances under which they were made, not misleading, in violation of

13 | Section 25401 of the California Corporations Code.

14 |     63.    Defendants' misrepresentations and omissions were made knowingly and with an

15 | intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

16 | use of proceeds from the Convertible Note Offering.

17 |     64.    Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

18 | in making its decision to purchase the Convertible Notes.

19 |     65.    As a direct and proximate result of the Defendants' wrongful conduct, Artemis IV

20 | has been damaged in connection with the misrepresentations and omissions alleged herein, in an

21 | amount not less than approximately $10,000,000, plus accrued interest.

22 |
### FOURTH CLAIM FOR RELIEF
### Securities Fraud—Cal. Corp. Code § 25504.1 (Aiding and Abetting)
23 | **(All Defendants)**

24 |     66.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

25 | allegations in Paragraphs 1 through 65 above.

26 |     67.    Upon information and belief, Defendants Organic Style and the Defendant

27 | Directors materially assisted in inducing Artemis IV to purchase Convertible Notes of Organic

28 | Style through misrepresentations and material omissions concerning the business plan of Organic

13

COMPLAINT
CASE NO. _____

421485.03

1    Style and the intended use of proceeds from the Convertible Note Offering.

2         68.    Upon information and belief, Defendants' material assistance to Organic Style

3    was done knowingly and with an intent to deceive or defraud Plaintiffs as to the business plan of

4    Organic Style and the intended use of proceeds from the Convertible Note Offering.

5         69.    As a direct result of the misrepresentations and omissions alleged herein,

6    Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

7    accrued interest.

8                    **FIFTH CLAIM FOR RELIEF**
                        <u>Breach of Contract</u>
9                      **(Defendant Organic Style)**

10        70.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11   allegations in Paragraphs 1 through 69 above.

12        71.    Artemis IV and Organic Style entered into a contractual relationship with respect

13   to the Convertible Notes.

14        72.    Artemis IV performed all of its obligations under the terms of the form of

15   Convertible Notes and the Subscription Letters.

16        73.    By transferring funds from Organic Style to Organic Bouquet, Organic Style

17   breached its contractual obligations to Artemis IV, and thereby seriously reduced and threatened

18   the value of Organic Style's assets,

19        74.    As a direct result of the breaches alleged herein, Artemis IV has been damaged in

20   an amount not less than approximately $10,000,000, plus accrued interest.

21                   **SIXTH CLAIM FOR RELIEF**
          <u>Common Law Fraud and Deceit—Cal. Civ. Code § 1709</u>
22        **(Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)**

23

24        75.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

25   allegations in Paragraphs 1 through 74 above.

26        76.    Defendants induced Artemis IV to purchase Convertible Notes of Organic Style

27   by misrepresenting the business plan of Organic Style and misrepresenting the intended use of

28   proceeds from the Convertible Note Offering.

421485.03

1    77.    Defendants' misrepresentations and omissions were made knowingly and with an

2  intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

3  use of proceeds from the Convertible Note Offering.

4    78.    Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

5  in making its decision to purchase the Convertible Notes.

6    79.    As a direct result of the misrepresentations alleged herein, Artemis IV has been

7  damaged in an amount not less than approximately $10,000,000 plus accrued interest.

8  <center>**SEVENTH CLAIM FOR RELIEF**
**Conspiracy (Fraud and Deceit)**</center>

9  <center>**(All Defendants)**</center>

10    80.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11  allegations in Paragraphs 1 through 79 above.

12    81.    Upon information and belief, Defendants entered into a conspiracy whereby they

13  knowingly and with an intent to defraud or deceive, induced Artemis IV to purchase Convertible

14  Notes of Organic Style by misrepresenting the business plan of Organic Style and

15  misrepresenting the intended use of proceeds from the Convertible Note Offering.

16    82.    Artemis IV reasonably relied upon the misrepresentations and omissions alleged

17  herein in making its decision to purchase the Convertible Notes.

18    83.    As a direct result of the misrepresentations and omissions alleged herein,

19  Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

20  accrued interest.

21  <center>**EIGHTH CLAIM FOR RELIEF**
**Aiding and Abetting (Fraud and Deceit)**</center>

22  <center>**(All Defendants)**</center>

23    84.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

24  allegations in Paragraphs 1 through 83 above.

25    85.    Upon information and belief, Defendants knew of the conduct constituting fraud

26  and deceit upon Artemis IV and gave substantial assistance and encouragement in committing

27  such fraud and deceit.  At a minimum, Defendant Organic Bouquet and Director Defendants

28  approved or acquiesced in the material misrepresentations and omissions to Artemis IV and in

<center>15</center>
<center>COMPLAINT
CASE NO. _____</center>

1 | the wrongful transfers of the assets of Organic Style.

2 |      86.    Artemis IV reasonably relied upon the misrepresentations and omissions alleged

3 | herein in making its decision to purchase the Convertible Notes.

4 |      87.    As a direct result of the misrepresentations and omissions alleged herein,

5 | Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

6 | accrued interest.

## NINTH CLAIM FOR RELIEF
### Fraudulent Conveyance—Cal. Civ. Code § 3439.04
**(All Defendants)**

9 |      88.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

10 | allegations in Paragraphs 1 through 87 above.

11 |      89.    Defendants improperly transferred or caused the transfer of Organic Style funds

12 | to Organic Bouquet with actual intent to hinder, delay, or defraud Plaintiffs.

## TENTH CLAIM FOR RELIEF
### Intentional Interference With a Contract
**(Defendant Organic Bouquet)**

15 |      90.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

16 | allegations in Paragraphs 1 through 89 above.

17 |      91.    A contractual relationship existed between Artemis IV and Defendant Organic

18 | Style, as embodied in the Convertible Notes and the Subscription Letter.

19 |      92.    Director Defendants knew of the existence of this contractual relationship

20 | between Organic Style and Artemis IV.

21 |      93.    Defendant Organic Bouquet caused Organic Style to transfer assets to Organic

22 | Bouquet in breach of Organic Style's contractual obligations to Artemis IV.

23 |      94.    Defendant Organic Bouquet and Director Defendants either intended to prevent

24 | performance of the contract or knew that prevention of performance was certain or substantially

25 | certain to occur as a result of their conduct.

26 |      95.    As a direct and proximate result of the conduct of Defendant Organic Bouquet

27 | and Director Defendants intentionally causing the prevention of the contractual relationship

28 |

421485.03

1  between Organic Style and Artemis IV, Artemis IV has been damaged in an amount not less than

2  approximately $10,000,000, plus accrued interest.

3  **ELEVENTH CLAIM FOR RELIEF**
   **Unjust Enrichment**

4  **(Defendant Organic Bouquet)**

5  96.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

6  allegations in Paragraphs 1 through 95 above.

7  97.    Defendant Organic Bouquet wrongly received Organic Style assets via the

8  fraudulent conduct of Defendants, and has been unjustly enriched thereby.

9  98.    Defendant Organic Bouquet should be required to reimburse Artemis IV for the

10  amount of any Organic Style assets it wrongfully received.

11  **TWELFTH CLAIM FOR RELIEF**
    **An Accounting**

12  **(Defendants Organic Style and Organic Bouquet)**

13

14  99.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

15  allegation in Paragraphs 1 through 98 above.

16  100.   As a direct and proximate result of the conduct of Defendants, Artemis IV has

17  been damaged in an amount not less than approximately $10,000,000, plus accrued interest.

18  101.   An accounting will show the amount of liability owed by Defendants to

19  Artemis IV.

20  102.   An accounting is necessary to determine the amount of liability owed by

21  Defendants to Artemis IV.

22  103.   Artemis IV is entitled to an accounting by Defendants as to the amount, equaling

23  not less than approximately $10,000,000, plus accrued interest, that it has been damaged by

24  Defendants' conduct.

25  **PRAYER FOR RELIEF**

26  WHEREFORE, Plaintiff Artemis IV respectfully demands judgment against Defendants,

27  jointly and severally, awarding Artemis IV:

28  1.    Compensatory damages in an amount not less than $10,000,000 to be determined

17

COMPLAINT
CASE NO. _____

1 | at trial;

2       2.     Punitive damages in an amount not less than $30,000,000 to be determined at

3 | trial;

4       3.     Consequential damages in an amount to be proved at trial;

5       4.    Rescission of the Subscription Agreements;

6       5.     An accounting of the finances of Defendants Organic Style and Organic Bouquet;

7       6.     Costs, fees, and interest, as provided by law;

8       7.    Attorneys' fees, as provided by law;

9       8.     Such other and further relief as the Court deems just and fair.

10

11 Dated: July 23, 2008                    KEKER & VAN NEST, LLP

12

13                               By: _____

14                                 ELLIOT R. PETERS

                                     JENNIFER A. HUBER

15

16                                —and—

17                                 PAUL, WEISS, RIFKIND, WHARTON

                                   & GARRISON LLP

18                                 MARTIN FLUMENBAUM

                                   MARC FALCONE

19

20                                 Attorneys for Plaintiff

                                ARTEMIS IV, LLC

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. _____

421485.03

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff ARTEMIS IV, LLC hereby demands a jury trial in the above matter.

3

4    Dated:  July 23, 2008                           KEKER & VAN NEST, LLP

5

6                                                    By: _____

7                                                    ELLIOT R. PETERS
                                                     JENNIFER A. HUBER
8

9                                                    —and—

10                                                   PAUL, WEISS, RIFKIND, WHARTON
                                                     & GARRISON LLP
11                                                   MARTIN FLUMENBAUM
                                                     MARC FALCONE
12

13                                                   Attorneys for Plaintiff
                                                     ARTEMIS IV, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. _____

421485.03

# EXHIBIT 1

**Artemis IV LLC**
**P.O. Box 809**
**Katonah, New York 10536**

July 23, 2008

Organic Style Limited
75 Cannon Street
London
EC4N 5BN
United Kingdom

Organic Style Directors

Gerald Prolman
119 Emerson Avenue
Novato, California 94949
United States of America
gprolman@cs.com

Christopher Grey Powell
11 Loros Drive
Saint George Telford
SHROPSHIRE TF2 9UE
Great Britain
Chris@OrganicBouquet.com

Adrian David Presland Bellamy
233 West Santa Inez Avenue
Hillsborough, California 94010
Untied States of America
adpbellamy@msn.com

John Brady
55 Antrim Road
Hancock, New Hampshire 03449
United States of America
jabrady@planthealthcare.com

Gentlemen:

Re: <u>Redemption of 2007 Convertible Notes and 2008 Convertible Notes</u>

As you know, on September 24, 2007 and October 28, 2007 Artemis IV LLC ("<u>Artemis</u>") invested £1,500,000 and £1,000,000, respectively, in Organic Style Limited's (the "Company") Convertible Loan Note and Warrant Instrument to Raise up to £5,000,000 (collectively, the "<u>2007 Convertible Notes</u>"). On February 19, 2008 and March 17, 2008, Artemis invested £500,000 and £1,750,000, respectively in the Company's Convertible Loan Note and Warrant Instrument to Raise up to £7,500,000 (the "<u>2008 Convertible Notes</u>"), and together with the 2007 Convertible Note, the "<u>Notes</u>"). Artemis is the "Investor Majority" under both the 2007 Convertible Notes and the 2008 Convertible Notes, holding over 85% of the nominal amount of Notes issued under each such instrument. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the applicable Notes.

The Investor Majority has determined and agreed that the value of the Company's assets is and has been seriously reduced and threatened, including as a result of the breach by the Company of the terms of the Notes as described below. Accordingly, pursuant to paragraph 9.1 of Schedule 2 of the Notes the Company is now obligated to immediately redeem all of the Notes and pay to the holders of the Notes all principal and accrued interest thereon. Under paragraph 4 of Schedule 2 of the Notes, interest shall continue to accrue on any such unpaid amounts at 30-day LIBOR plus 6% until paid in full.

As we brought to your attention with our letter dated April 2, 2008, the proceeds were not, in fact, used as required by the Notes. The Company therefore breached the obligation in clause 5 of the Notes requiring that all proceeds be used "to fund the Company's working capital, including with limitation, transaction expenses." This constituted a willful and material breach of the Notes which still has not been remedied despite Artemis' good faith attempts to work with the Company's management for months to find an acceptable solution. Accordingly, without prejudice to all rights under paragraph 9.1 of Schedule 2 of the Notes and without limiting the effectiveness of the Investor Majority's determination as described above, this letter also serves as notice pursuant to paragraph 8 of Schedule 2 of the Notes that the Majority Investor hereby elects to exercise its right to have the Notes redeemed, as a result of this material breach by the Company. Such redemption shall be required to occur at the earliest possible date permitted in accordance with the terms of the Notes.

Please send all amounts due to Artemis in such redemption by wire transfer to the following account:

FIRST REPUBLIC BANK

BRANCH 79

ABA NO. 321081669

ACCT NAME: ARTEMIS IV, LLC

ACCT NO. 97910004906


Artemis expressly reserves all of its rights and remedies at law or in equity.

Sincerely,

ARTEMIS IV LLC


By:  _Kevin Brine_

Kevin R. Brine
Member Manager


cc: Martin Flumenbaum, Esq.

3