1   KEKER & VAN NEST, LLP
    ELLIOT R. PETERS - #158708
2   JENNIFER A. HUBER - #250143
    710 Sansome Street
3   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
4   Facsimile:  (415) 397-7188
    epeters@kvn.com
5   jhuber@kvn.com

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    MARTIN FLUMENBAUM (application for admission *pro hac vice* pending)
7   MARC FALCONE (application for admission *pro hac vice* pending)
    1285 Avenue of the Americas
8   New York, New York 10019-6064
    Telephone:  (212) 373-3000
9   Facsimile:  (212) 757-3990

10  Attorneys for Plaintiff
    ARTEMIS IV, LLC

11

12

13                  UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15

16  ARTEMIS IV, LLC,                      Case No. CV-08-3528-JL

17                        Plaintiff,      **PROOF OF SERVICE ON DEFENDANTS**
                                          **CHRISTOPHER POWELL AND**
18       v.                               **ORGANIC STYLE**
                                          *(Summons; Complaint; Plaintiff's Disclosure*
19  ORGANIC BOUQUET, INC., ORGANIC        *Statement; U.S. District Court Welcome Packet; ECF*
    STYLE, LTD., GERALD PROLMAN,          *Registration Handout; Order Setting Initial Case*
20  CHRISTOPHER GREY POWELL, ADRIAN       *Management Conference and ADR Deadlines;*
    DAVID PRESLAND BELLAMY, JOHN          *Booklet: "Consenting to a Magistrate Judge's*
21  BRADY, and JOHN ROBERT NEVADO,        *Jurisdiction in the Northern District of California";*
                                          *Application of Marc Falcone to Appear as Counsel*
22                        Defendants.     *Pro Hac Vice on behalf of Plaintiff; Proposed Order*
                                          *thereon; Application of Martin Flumenbaum to*
23                                        *Appear as Counsel Pro Hac Vice on behalf of*
                                          *Plaintiff; Proposed Order thereon)*
24
                                          Judge:      Chief Magistrate Judge James
25                                                    Larson

26                                        Date Comp. Filed:    July 23, 2008

27

28

Filed on behalf of the Plaintiff
Deponent: M A B Timerick
1st Affidavit of Deponent
Exhibits: "MABT1"
Sworn:  21  August 2008

IN THE UNITED STATES DISTRICT COURT                    Case No. CV 08 3528
FOR THE NORTHERN DISTRICT OF CALIFORNIA
B E T W E E N:

ARTEMIS IV, LLC

                                                                                    Plaintiff

-and-

ORGANIC BOUQUET, INC., ORGANIC STYLE, LTD.,
GERALD PROLMAN, CHRISTOPHER GREY POWELL.,
ADRIAN DAVID PRESLAND BELLAMY, JOHN BRADY, and
JOHN ROBERT NEVADO

                                                                                    Defendants

---

### AFFIDAVIT OF PROCESS SERVER

---

I, Mark Andrew Barton Timerick of Ely Consultants of PO Box 174, Thetford, IP24 2WY in the County of Norfolk, England, Process Server and not a party to these proceedings, for the purpose of service instructed by Macfarlanes LLP of 20 Cursitor Street, London, EC4A 1LT, England,   Solicitors for the Plaintiff, make Oath and say:

1.  THAT I did on Friday the 15th day of August 2008 at 1550 hours serve Christopher Powell, one of the above-named Defendants with a Summons, Complaint and demand for the jury trial,  Plaintiff's disclosure statement, Application of Martin Flumenbaum to appear as Counsel, Proposed Order granting application of Martin Flumenbaum to appear as Counsel, Application of Marc Falcone to appear as Counsel, Proposed Order granting application of Marc Falcone to appear as Counsel, Order setting initial Case Management Conference and ADR deadlines, ECF registration information handouts and Information pack entitled 'Consenting to a Magistrate Judges Jurisdiction in the Northern District of California', by delivering the same personally to the said Christopher Powell at 11 Lords Drive, St George, Telford, Shropshire, TF2 9UE.

2.  THAT at the same time and place I also handed a further complete set of the above-named documents to the said Christopher Powell in his capacity as the Director of Organic Style Ltd, such company also being one of the above-named Defendants.

3.  THAT at the time of service, the person so served readily admitted their identity to me.

MABT1  4.  THERE is now shown to me marked "MABT1" true copies of that so served by me.

Sworn to at Shrewsbury          6/7 Harlescott Lane
Shrewsbury County Court
in the County of Shropshire,
England.
this 21 day of August 2008

Before me,

———A Solicitor———

This Affidavit is filed on behalf of the Plaintiff

Tue  21 day of August 2008

Ref ...........

**HENRY LEES**
Solicitors
6/7 Harlescott Lane
Harlescott
Shrewsbury SY1 3AH

**Mark Munro**
Solicitor

Filed on behalf of the Plaintiff
Deponent: M A B Timerick
1st Affidavit of Deponent
Exhibits: "MABT1"
Sworn:  21  August 2008

IN THE UNITED STATES DISTRICT COURT                    Case No. CV 08 3528
FOR THE NORTHERN DISTRICT OF CALIFORNIA
B E T W E E N:

ARTEMIS IV, LLC

Plaintiff

-and-

ORGANIC BOUQUET, INC., ORGANIC STYLE, LTD.,
GERALD PROLMAN, CHRISTOPHER GREY POWELL.,
ADRIAN DAVID PRESLAND BELLAMY, JOHN BRADY, and
JOHN ROBERT NEVADO

Defendants

---

## EXHIBIT

---

This is the exhibit marked "MABT1"
as referred to in the First Affidavit of
**Mark Andrew Barton Timerick**
Sworn this 21 day of August 2008

Before me,

A Solicitor

**Mark Munro**
Solicitor
Shropshire

✎ AO 440 (Rev. 03/08)  Civil Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of California

ARTEMIS IV, LLC

_____
Plaintiff

v.

ORGANIC BOUQUET, INC., ORGANIC STYLE, LTD.,
GERALD PROLMAN, CHRISTOPHER GREY POWELL,
ADRIAN DAVID PRESLAND, BELLAMY, JOHN BRADY, and
Defendant
JOHN ROBERT NEVADO

)
)
)
)
)
)
)

**CV 08    3528**

Civil Action No.

**Summons in a Civil Action**

To: _____
           (Defendant's name)

A lawsuit has been filed against you.

Within _____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

ELLIOT R. PETERS #158708/JENNIFER A. HUBER #250143

KEKER & VAN NEST LLP

710 Sansome Street

San Francisco, California 94111

Telephone:  (415) 391-5400; Facsimile: (415) 397-7188

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
_____
Name of clerk of court

Date: July ___, 2008    『JUL 2 3 2008
_____
Deputy clerk's signature

**ANNA SPRINKLES**

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

NDCAO440

✎ AO 440 (Rev. 03/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

(1) personally delivering a copy of each to the individual at this place, _____; or

(2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

(3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
_____; or

returning the summons unexecuted to the court clerk on _____.

My fees are $ _____0.00_____ for travel and $ _____0.00_____ for services, for a total of $ _____0.00_____.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

ORIGINAL
FILED

08 JUL 23 PH 12:37

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   KEKER & VAN NEST, LLP
    ELLIOT R. PETERS - #158708
2   JENNIFER A. HUBER - #250143
    710 Sansome Street
3   San Francisco, California 94111-1704
    Telephone: (415) 391-5400
4   Facsimile: (415) 397-7188
    epeters@kvn.com
5   jhuber@kvn.com

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    MARTIN FLUMENBAUM (application for admission *pro hac vice* pending)
7   MARC FALCONE (application for admission *pro hac vice* pending)
    1285 Avenue of the Americas
8   New York, New York 10019-6064
    Telephone: (212) 373-3000
9   Facsimile: (212) 757-3990

10   Attorneys for Plaintiff
    ARTEMIS IV, LLC

11

12                                                                        JL

13                   UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15   ARTEMIS IV, LLC,                 **CV 08     3528**

16                                   Case No.

                       Plaintiff,       **COMPLAINT**

17       v.                               **DEMAND FOR JURY TRIAL**

18   ORGANIC BOUQUET, INC., ORGANIC
    STYLE, LTD., GERALD PROLMAN,
19   CHRISTOPHER GREY POWELL, ADRIAN
    DAVID PRESLAND BELLAMY, JOHN
20   BRADY, and JOHN ROBERT NEVADO,

21                           Defendants.

22

23

24

25

26

27

28

421485.03

## Nature of the Action

1.     This is an action for securities fraud under the laws of the State of California and the United States, as well as for breach of fiduciary duty, breach of contract, fraudulent conveyance, and conspiring in and aiding and abetting an unlawful scheme to deprive Plaintiff Artemis IV, LLC ("Artemis IV") of the benefit of its investments in Defendant Organic Style, Ltd. ("Organic Style").

2.     Defendants obtained an investment of almost $10,000,000 from Artemis IV under false pretenses and misappropriated those funds.  Defendants induced Artemis IV to invest in Organic Style by representing that Organic Style would use the funds to purchase businesses with positive cash flow and obtain additional debt and equity financing for the same purpose. Instead, Defendants used the money loaned by Artemis IV, and have used most of Organic Style's available cash, to fund the operations of other companies, including Defendant Organic Bouquet.  At least one Director of Organic Style, Defendant Gerald Prolman, held substantial interest in Organic Bouquet.

3.     As a result of Defendants' conduct, the terms of the Organic Style convertible notes purchased by Artemis IV (the "Convertible Notes") have been materially breached; the value of Organic Style has already been seriously reduced and is further threatened; Defendants have sacrificed the business of Organic Style by transferring away the necessary capital that was invested to fund Organic Style's purported business plan; and, upon information and belief, as a result of the wrongful transfers of funds, Organic Style is either insolvent or in the zone of insolvency, with no prospects for making interest and principal payments on the Convertible Notes.

4.     Upon information and belief, Defendants' misconduct has been motivated not only by their desire to protect the personal interests of certain Organic Style Directors in the companies to which Organic Style diverted funds, but also to subvert the rights of Artemis IV with respect to the Convertible Notes.  Part of the business plan of Organic Style was to acquire Organic Bouquet through a subsidiary of Organic Style.  Under the terms of the Convertible Notes, Artemis IV had the right, under certain circumstances, to convert its interests in Organic

1    Style into equity in the combined company. Defendants' largest block of transfers from Organic

2    Style—totaling approximately $6,600,000 to Organic Bouquet—was undocumented and made

3    without any apparent consideration or, for that matter, any defined terms whatsoever—not even

4    an interest rate or maturity date. Upon information and belief, Defendants intended to hide these

5    transfers and cause Organic Style to acquire Organic Bouquet at an inflated price—i.e., a price

6    that did not account for the undocumented debt that Organic Bouquet owed Organic Style. The

7    result of this scheme, if successful, would have been to reduce drastically the ownership share of

8    Artemis IV upon any conversion of the Convertible Notes.

## Jurisdiction and Venue

9    

10        5.    This action arises, in part, under the laws of the United States, including

11    Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and the rules

12    promulgated thereunder by the Securities and Exchange Commission (the "SEC"). This Court

13    has original and exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27

14    of the Exchange Act, 15 U.S.C. § 78aa. This Court has supplemental jurisdiction pursuant to 28

15    U.S.C. § 1367(a) for all claims asserted herein not arising under the laws of the United States.

16        6.    In addition, this Court has jurisdiction over all claims asserted herein under

17    28 U.S.C. §§ 1332 and 1376(b). The controversy is between a New York citizen and citizens of

18    different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

19        7.    Venue is proper pursuant to 28 U.S.C. § 1391(a)-(b) and 15 U.S.C. § 78aa. A

20    substantial part of the events or omissions giving rise to the claims against Defendants occurred

21    in this District, Defendants have transacted business in this District, and one or more Defendants

22    reside in this District.

## The Parties

23    

24        8.    Plaintiff Artemis IV LLC ("Artemis IV") is a limited liability company organized

25    under the laws of the State of Delaware with its principal place of business in Katonah,

26    New York.

27        9.    Defendant Organic Bouquet, Inc. ("Organic Bouquet") is a corporation

28    incorporated under the laws of the State of California with headquarters in San Rafael,

421485.03

1  California.

2        10.    Defendant Organic Style Ltd. ("Organic Style") is a corporation incorporated

3  under the laws of England and Wales, registration number 5777531, with its principal place of

4  business in London, United Kingdom.  Organic Style became a registered corporation in the

5  United Kingdom on April 11, 2006, with a Board of Directors that was nearly identical to the

6  Board of Organic Bouquet.

7        11.    Defendant Gerald Prolman ("Prolman") is, and at relevant times was, a Director

8  of both Organic Style and Organic Bouquet.  Prolman is also the controlling shareholder of

9  Organic Bouquet and Organic Style.  Upon information and belief, Prolman resides in or around

10  Novato, California.

11        12.    Defendant John Brady ("Brady") is, and at relevant times was, a Director of both

12  Organic Style and Organic Bouquet.  Upon information and belief, Brady resides in

13  New Hampshire.  At relevant times, Brady served on the Audit Committee of the Organic Style

14  Board of Directors.

15        13.    Defendant Christopher Grey Powell ("Powell") is, and at relevant times was, a

16  Director of both Organic Style and Organic Bouquet.  Upon information and belief, Powell

17  resides in the United Kingdom.

18        14.    Defendant Adrian David Presland Bellamy ("Bellamy") is, and at relevant times

19  was, a Director of both Organic Style and Organic Bouquet.  Upon information and belief,

20  Bellamy resides in or around Hillsborough, California.

21        15.    Defendant John Robert Nevado ("Nevado") is, and at relevant times was, a

22  Director of Organic Style.  Upon information and belief, he is an executive of, and has a

23  significant economic interest in, Hamlet Financial Corp. ("Hamlet"), a company incorporated in

24  the British Virgin Islands.  Hamlet is a substantial shareholder in Organic Style.  Upon

25  information and belief, Nevado resides in Spain.  At relevant times, Nevado was a member of the

26  Audit Committee of the Board of Directors of Organic Style.

27        16.    Defendants Organic Style, Organic Bouquet, Prolman, Bellamy, Brady, Nevado

28  and Powell are herein collectively referred to as the "Defendants."  Defendants Prolman,

1  Bellamy, Brady, Nevado and Powell are herein collectively referred to as the "Director

2  Defendants."

### Factual Allegations

3

4      17.    In August or September of 2007, Gerald Prolman, the founder of Organic

5  Bouquet and, at the time, a Director of Organic Bouquet, its Chief Executive Officer and

6  controlling shareholder, approached Artemis IV in California seeking investment capital for a

7  new company formed by Organic Bouquet. This newly formed company for which Prolman

8  sought financing was Defendant Organic Style.

9      18.    In January 2007, Defendants Organic Style and Organic Bouquet entered into an

10  agreement whereby Organic Style authorized Organic Bouquet and its directors, officers and

11  representatives to act on behalf of Organic Style in preparing Organic Style for a planned IPO on

12  the Alternative Investment Market of the London Stock Exchange (the "AIM") and in related

13  matters. Preparation for Organic Style's planned AIM IPO included the offering of Convertible

14  Notes purchased by Artemis IV, which would allow the Director Defendants, as is required for

15  the IPO, to attest to AIM that Organic Style had working capital sufficient for 12 months of post-

16  admission operation. With respect to their dealings with Artemis IV, Prolman, the other Director

17  Defendants, and Organic Bouquet at all times acted for and on behalf of themselves and Organic

18  Style, and Organic Style acted through Organic Bouquet and the Director Defendants.

19      19.    Prolman founded Organic Bouquet in 2001 to sell organically grown flowers over

20  the Internet. He is the controlling shareholder of Organic Bouquet, and a Director of both

21  Organic Bouquet and Organic Style. Defendant Bellamy also, at all relevant times, was a

22  director of both Organic Bouquet and Organic Style, and, on information and belief, served as

23  Chair of the Organic Bouquet Board of Directors and on the Organic Bouquet Audit Committee.

24  Defendant Nevado was, at all relevant times, until December 12, 2007, a Director of Organic

25  Style and, upon information and belief, held an economic interest in Hamlet.

26      20.    During (i) an initial pitch to Artemis IV in a telephone conversation with

27  Artemis IV President Ralph Crevoshay, (ii) a subsequent meeting with Crevoshay in Prolman's

28  office in San Rafael, California in September 2007, and (iii) in several discussions with

421485.03

1  Artemis IV Member Manager Kevin Brine, Prolman told Artemis IV that Organic Bouquet had

2  strong growth prospects, and that Organic Bouquet needed to raise additional capital to fund its

3  business plan and operations.  In order to raise additional capital, Prolman said, Organic Bouquet

4  had developed a four-step plan.

5      21.     The first step in the plan that Prolman described was the formation of Organic

6  Style, an English company, with a business plan to acquire companies with positive cash flow

7  and lines of business complementary to the business of Organic Bouquet (the "Target

8  Companies").  Prolman emphasized that Organic Style would use the capital that Defendants

9  sought to raise to become a diversified company, with numerous lines of business—including

10  organic or ecologically-friendly gourmet foods and gift baskets, bed and bath products, apparel,

11  pet gifts, body care, and gardening products, among others—by making strategic acquisitions of

12  companies with positive cash flow.

13      22.     The second step in the plan was to raise capital to fund the business plan of

14  Organic Style— i.e., to finance the acquisitions of the Target Companies.  This fundraising step

15  had three components: (i) an offering of convertible notes (the "Convertible Notes");

16  (ii) obtaining a listing and making an initial public offering ("IPO") on the AIM, and

17  (iii) obtaining a pre-IPO bridge loan to fund transaction expenses and IPO costs.  Prolman told

18  Artemis IV that Defendants planned to raise £7.5 million through the sale of Convertible Notes

19  and that this financing would fund the cash portion of the Target Company purchase prices and

20  ensure a technical listing on the AIM for the IPO.  Prolman represented that the IPO would bring

21  in an additional £7.5 million of financing for Organic Style.

22      23.     The third step in the plan was to acquire the Target Companies.  In order to

23  induce Artemis IV to purchase the Convertible Notes, Prolman told Artemis IV that Organic

24  Bouquet intended to make Organic Style the world's largest on-line retailer of ecologically-

25  friendly products by acquiring existing online retailers.  Prolman identified five Target

26  Companies that Organic Style would acquire for a total purchase price of approximately $31

27  million.

28      24.     The final step in the Organic Bouquet plan was to merge Organic Bouquet into a

421485.03

1  wholly-owned subsidiary of Organic Style, and then use the positive cash flow generated by the

2  acquired Target Companies, in part, to finance the growth of Organic Bouquet.

3      25.    Prolman represented that, prior to the final step of the four-step plan, Organic

4  Style would use the proceeds of the Convertible Note offering (the "Note Offering") to finance

5  the acquisitions of Target Companies by Organic Style.  Prolman gave no indication that

6  Defendants would conspire to transfer proceeds from the Note Offering—or any other funds—

7  from Organic Style to Organic Bouquet in order to finance the operations of Organic Bouquet

8  before the actual merger of Organic Bouquet into Organic Style.

9      26.    During each of the discussions in or around September 2007 between Crevoshay

10  or Brine, on the one hand, and Prolman, on the other hand—and also during a discussion

11  between Brine and defendant John Brady, a Director of both Organic Bouquet and Organic

12  Style—it was stated or suggested that the proceeds of the Note Offering would be used by

13  Organic Style to finance its acquisitions of Target Companies with positive cash flow.

14  Moreover, although it was always understood that, upon completion of the merger of Organic

15  Bouquet into Organic Style, funds generated by the operations of the acquired Target Companies

16  would be used to finance the planned growth of Organic Bouquet, no Defendant ever gave any

17  indication to Artemis IV that Organic Style would finance the operations of other companies, or

18  the operations of Organic Bouquet, prior to the merger.

19      27.    In sum, Defendants and/or their representatives represented that money loaned to

20  Organic Style by Artemis IV would be used to create a strong, cash-flow positive company—a

21  company against which the holders of Organic Style Convertible Notes would have recourse for

22  repayment of the loans and in which the Convertible Noteholders would have an opportunity to

23  convert their interests to equity.  Defendants did not disclose that they intended, even as they

24  were soliciting Artemis IV to purchase the Convertible Notes, to sacrifice the business plan of

25  Organic Style and divert large sums of capital from Organic Style to Organic Bouquet.

26      28.    In addition, the form of Convertible Note presented to Artemis IV in connection

27  with its purchase of Convertible Notes and the letter agreement to purchase the Convertible

28  Notes (the "Subscription Letter"), expressly provided that Organic Style would use proceeds

6

COMPLAINT

CASE NO. _____

1  obtained from the sale of the Convertible Notes to fund "the Company's [Organic Style's]

2  working capital including, without limitation, transaction expenses." The form of Convertible

3  Notes gave no indication that proceeds from the Note Offering would be used to bail-out Organic

4  Bouquet and fund other companies instead of for the acquisition of Target Companies and

5  working capital for Organic Style.

6       29.  In reliance upon Defendants' representations concerning the use of proceeds

7  obtained through the Convertible Note Offering and the express terms of the form of Convertible

8  Notes, Artemis IV purchased £2,500,000 of an offering of Organic Style Convertible Notes in

9  2007 (the "2007 Convertible Notes") and £2,250,000 of a Convertible Note offering in 2008 (the

10  "2008 Convertible Notes") as follows:

| Offering | Artemis IV Purchase Date | Amount of Artemis IV Purchase |
|---|---|---|
| 2007 Convertible Notes | September 24, 2007 | £1,500,000 |
| 2007 Convertible Notes | October 8, 2007 | £1,000,000 |
| 2008 Convertible Notes | February 19, 2008 | £500,000 |
| 2008 Convertible Notes | March 17, 2008 | £1,750,000 |

17      30.  Upon information and belief, even as Defendants represented that they would use

18  the proceeds from the Convertible Note offering to finance acquisitions of the Target Companies

19  and the working capital of Organic Style only, and although the form of Convertible Notes

20  confirmed that proceeds obtained from the sale of the Convertible Notes would be used only for

21  the working capital of Organic Style, Defendants were, in fact, planning to transfer proceeds

22  from the Convertible Note offering and other sources of Organic Style funds to Organic Bouquet

23  to finance the working capital needs of what had become a failing enterprise.

24      31.  In 2008, Artemis IV, after making the last of its 2008 Convertible Note purchases,

25  discovered that Organic Style had diverted roughly $6,600,000 to Organic Bouquet and diverted

26  additional funds of $1,500,000 to Hamlet and $1,350,000 to Flortec, S.A, a company registered

27  on the Island of Guernsey.

28

421485.03

32. Moreover, although the Director Defendants, as Directors of both Organic Style and Organic Bouquet, had conflicting interests with respect to transactions between the companies, and although Prolman, in particular, had conflicting interests as a Director of both entities and as a major shareholder of Organic Bouquet, the transfers of nearly $6,600,000 from Organic Style to Organic Bouquet have never been documented, and, upon information and belief, were made for less than fair value and without any definite terms, including, for example, a maturity date or interest rate.

33. To date, the funds have not been returned to Organic Style, and, upon information and belief, Organic Bouquet is incapable of making repayment. Organic Style has failed to obtain a listing on the AIM and the IPO has not gone forward.

34. As Artemis IV recently discovered, Organic Bouquet had been consuming cash at a rate that could not be sustained pending its planned merger into Organic Style. If Organic Bouquet were forced into bankruptcy prior to the proposed merger, Prolman and the other original shareholders would lose their investment. Thus, on information and belief, Defendants caused the undocumented transfers of funds from Organic Style to Organic Bouquet to bail out Organic Bouquet without obtaining any consideration in exchange for Organic Style.

35. Upon information and belief, Defendants caused the transfer of funds from Organic Style to Organic Bouquet also as part of a scheme to inflate the value of Organic Bouquet, and thus inflate the value of the prospective combined companies, in an effort to preclude Artemis IV from acquiring control of Organic Style through the exercise of its rights under the Convertible Notes. Defendants understood that Artemis IV purchased the Convertible Notes in part because of the opportunity to convert its investment from debt to equity. Defendants also knew that given the true capitalization of Organic Style, it was likely that Artemis IV would acquire control of Organic Style upon the exercise of its conversion rights. Upon information and belief, Defendants sought to block Artemis IV from taking control by making the capitalization of the prospective combined company appear greater than it was.

36. On information and belief, the Director Defendants at a minimum approved or acquiesced in the misrepresentations made to Artemis IV and the transfers of Organic Style

COMPLAINT
CASE NO. _____

421485.03

1  capital to Organic Bouquet, Hamlet and Flortec, S.A.

2      37.    In sum, Organic Style and the Directors Defendants, pursuant to a plan pre-dating

3  the Artemis IV investments, used funds provided by Artemis IV and earmarked to finance the

4  Target Company acquisitions and working capital needs of Organic Style to, instead, try to bail

5  out Organic Bouquet and defraud Artemis IV with respect to its conversion rights under the

6  Convertible Notes.

7      38.    The transfers from Organic Style to Organic Bouquet, Hamlet and Flortec, S.A.,

8  totaling approximately $9,450,000, rendered Organic Style unable to pay its debts to Artemis IV.

9      39.    The form of Convertible Notes provides that the Convertible Notes are subject to

10  redemption 20 days after the Investor Majority gives Organic Style written notice of a material

11  breach of the terms of the Convertible Notes by Organic Style if said material breach has not

12  been cured.  The form of Convertible Notes defines "Investor Majority" to mean "the holders of

13  51% of the Notes outstanding," which is Artemis IV.

14      40.    In addition, the Convertible Notes are subject to immediate redemption upon the

15  occurrence of any "Event of Default," which includes a determination by the Investor Majority—

16  i.e., Artemis IV—that "the value of the Company's [Organic Style's] assets is seriously reduced

17  or threatened."

18      41.    On July 23, 2008, Artemis IV served notice (the "Redemption Notice") on

19  Organic Style and those Director Defendants who are currently Directors of Organic Style,

20  declaring two grounds for redemption of the Convertible Notes:  (i) the determination by

21  Artemis IV that that the value of Organic Style has been seriously reduced and threatened since

22  the Convertible Notes were issued, due to, among other things, the unlawful transfer of funds

23  from Organic Style to Organic Bouquet, and (ii) the willful and material breach of the terms of

24  the Convertible Notes, consisting of Organic Style's misuse of the proceeds of the Convertible

25  Note Offering.  The Redemption Notice is attached hereto as Exhibit 1.

26      42.    All principal and interest accrued on the Convertible Notes became immediately

27  due to Artemis IV on July 23, 2008.  To date, no payment has been made.

28

421485.03

## ALLEGATIONS SUPPORTING INFERENCE OF FRAUDULENT INTENT

43.    At the same time that certain Defendants were inducing Artemis IV to purchase four tranches of Organic Style Convertible Notes by representing that Organic Style would use the proceeds from the Note Offering to finance acquisitions of companies with positive cash flow, Defendants knew that they intended to use the proceeds of the Note Offering to finance the operations of Organic Bouquet, which was generating substantial operating losses.

44.    On August 29, 2007, Defendants Prolman, Bellamy, Brady, Nevado, and Powell participated, as Organic Style Directors, in a telephonic meeting of the Organic Style Board. On that date, Defendants Prolman, Bellamy, Brady, and Powell were also Directors of Organic Bouquet, and Defendant Prolman held substantial financial interests in Organic Bouquet. The minutes of this telephonic meeting indicate that during the first seven months of 2007, Organic Bouquet generated an operating loss of $1.124 million, which meant that Organic Bouquet was losing money at a rate 8.8 percent faster than had been budgeted for 2007. The minutes further indicate that, at least by August 29, 2007, Organic Style (which had no operating companies at the time) and the other Defendants regarded the Convertible Notes, described by Organic Style in the minutes as "Bridge" financing, as a critical source of financing for Organic Bouquet. Indeed, the minutes reflect that during a financial presentation by Defendant Powell, it was noted that "cash management" was "the key financial focus" for Organic Bouquet pending its receipt of proceeds from the *Organic Style* Note Offering.

45.    Additionally, the transfers from Organic Style to Organic Bouquet were so large and formed such a substantial percentage of Organic Style's total available capital, that all of the Director Defendants must have either known of them or, at a minimum, were highly reckless in not knowing of them. From June 2007 through February 2008, Organic Style raised capital of approximately $8.76 million, of which about $5.5 million (roughly 62%) was transferred to Organic Bouquet and Hamlet. It is hard to imagine how the Director Defendants would not have known about these and subsequent transfers.

46.    Similarly, the Convertible Note Offering was so large, and formed such a significant and indispensable part of Organic Style's financing plans, that all of the Director

10
COMPLAINT
CASE NO. _____

1  Defendants must have known of them and reviewed the relevant documentation, or were reckless

2  in not doing so.

3      47.    Moreover, at the latest, prior to the Artemis IV purchase of Organic Style

4  Convertible Notes in March of 2008, Organic Style had already transferred almost $4.5 million

5  to Organic Bouquet without any loan documentation or disclosure to Artemis IV, despite

6  representations that proceeds from the Note Offering would be used to acquire the cash-flow

7  positive Target Companies and fund the operations of Organic Style.  In December 2007, the

8  same month that Defendant Nevado resigned from the Organic Style Board, Organic Style

9  advanced a loan in excess of $1,000,000 to Hamlet.

**FIRST CLAIM FOR RELIEF**

10      Securities Fraud—Exchange Act §10(b) and SEC Rule 10b-5

11  **(Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)**

12      48.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

13  allegations in Paragraphs 1 through 47 above.

14      49.    Defendants carried out plans, schemes and courses of conduct that were intended

15  to and did induce Artemis IV to purchase Convertible Notes of Organic Style by misrepresenting

16  the business plan of Organic Style and misrepresenting the intended use of proceeds from the

17  Convertible Note Offering.

18      50.    Defendants, as a group and individually (i) employed devices, schemes, and

19  artifices to defraud; (ii) made untrue statements of material fact and omitted to state material

20  facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a

21  course of business that operated as a fraud and deceit upon Plaintiff, all in violation of Section

22  10(b) of the Exchange Act and SEC Rule 10b-5.

23      51.    Defendants, individually and in concert, directly or indirectly engaged and

24  participated in this course of conduct, in connection with the purchase and sale of securities, to

25  deceive Artemis IV as to the business plan of Organic Style and the intended use of proceeds

26  from the Convertible Note Offering, and to transfer such proceeds from Organic Style to Organic

27  Bouquet.

28      52.    Defendants' misrepresentations and omissions were made knowingly and with an

421485.03

1  intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

2  use of proceeds from the Convertible Note Offering.

3      53. .   Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

4  in making its decision to purchase the Convertible Notes.

5      54.     As a direct and proximate result of the misrepresentations and omissions and the

6  fraudulent schemes alleged herein, Artemis IV has been damaged in an amount not less than

7  approximately $10,000,000, plus accrued interest.

8                    **SECOND CLAIM FOR RELIEF**
                    Control Person Liability—Exchange Act § 20(a)

9                              **(All Defendants)**

10     55.     Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11 allegations in Paragraphs 1 through 54 above.

12     56.     At all relevant times, Organic Bouquet controlled Organic Style and each of the

13 Director Defendants controlled Organic Bouquet and/or Organic Style within the meaning of

14 Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, their

15 ownership and contractual rights, their access to and review of the relevant documents, their

16 participation in and/or awareness of the Convertible Note Offering and the operations and

17 financial condition of Organic Style and Organic Bouquet, Defendants had the power to

18 influence and control and did influence and control, directly or indirectly, the decision-making of

19 Organic Style and/or Organic Bouquet.

20     57.     Upon information and belief, Defendants all had unlimited access to information

21 concerning the operations of Organic Style and Organic Bouquet, the financial condition of both

22 companies and the improper and undisclosed diversion of funds alleged herein, and had the

23 ability to prevent the schemes alleged herein from occurring

24     58.     By virtue of their positions as controlling persons, Defendants are liable pursuant

25 to Section 20(a) of the Exchange Act for the violations of Section 10(b) of the Exchange Act and

26 SEC Rule 10b-5 alleged herein.

27     59.     As a direct and proximate result of the Defendants' wrongful conduct, Artemis IV

28 has been damaged in connection with the misrepresentations and omissions alleged herein in an

421485.03

1  amount not less than approximately $10,000,000 plus accrued interest.

2  ## THIRD CLAIM FOR RELIEF
   ### Securities Fraud—Cal. Corp. Code § 25401
3  **(Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)**

4     60.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

5  allegations in Paragraphs 1 through 59 above.

6     61.    Defendants induced Artemis IV to purchase Convertible Notes of Organic Style

7  by misrepresenting the business plan of Organic Style and misrepresenting the intended use of

8  proceeds from the Convertible Note Offering.

9     62.    Defendants, as a group and individually, offered to sell and did sell securities in

10  California by means of written and oral communication that included untrue statements of a

11  material fact and omitted to state material facts necessary in order to make the statements made,

12  in the light of the circumstances under which they were made, not misleading, in violation of

13  Section 25401 of the California Corporations Code.

14     63.    Defendants' misrepresentations and omissions were made knowingly and with an

15  intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

16  use of proceeds from the Convertible Note Offering.

17     64.    Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

18  in making its decision to purchase the Convertible Notes.

19     65.    As a direct and proximate result of the Defendants' wrongful conduct, Artemis IV

20  has been damaged in connection with the misrepresentations and omissions alleged herein, in an

21  amount not less than approximately $10,000,000, plus accrued interest.

22  ## FOURTH CLAIM FOR RELIEF
   ### Securities Fraud—Cal. Corp. Code § 25504.1 (Aiding and Abetting)
23  **(All Defendants)**

24     66.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

25  allegations in Paragraphs 1 through 65 above.

26     67.    Upon information and belief, Defendants Organic Style and the Defendant

27  Directors materially assisted in inducing Artemis IV to purchase Convertible Notes of Organic

28  Style through misrepresentations and material omissions concerning the business plan of Organic

421485.03

1  Style and the intended use of proceeds from the Convertible Note Offering.

2      68.    Upon information and belief, Defendants' material assistance to Organic Style

3  was done knowingly and with an intent to deceive or defraud Plaintiffs as to the business plan of

4  Organic Style and the intended use of proceeds from the Convertible Note Offering.

5      69.  .  As a direct result of the misrepresentations and omissions alleged herein,

6  Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

7  accrued interest.

8                     **FIFTH CLAIM FOR RELIEF**
                     Breach of Contract
9                     (Defendant Organic Style)

10     70.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11  allegations in Paragraphs 1 through 69 above.

12     71.    Artemis IV and Organic Style entered into a contractual relationship with respect

13  to the Convertible Notes.

14     72.    Artemis IV performed all of its obligations under the terms of the form of

15  Convertible Notes and the Subscription Letters.

16     73.    By transferring funds from Organic Style to Organic Bouquet, Organic Style

17  breached its contractual obligations to Artemis IV, and thereby seriously reduced and threatened

18  the value of Organic Style's assets,

19     74.    As a direct result of the breaches alleged herein, Artemis IV has been damaged in

20  an amount not less than approximately $10,000,000, plus accrued interest.

21                     **SIXTH CLAIM FOR RELIEF**
                     Common Law Fraud and Deceit—Cal. Civ. Code § 1709
22                     (Defendants Organic Style, Organic Bouquet, Prolman and Brady Only)

23

24     75.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

25  allegations in Paragraphs 1 through 74 above.

26     76.    Defendants induced Artemis IV to purchase Convertible Notes of Organic Style

27  by misrepresenting the business plan of Organic Style and misrepresenting the intended use of

28  proceeds from the Convertible Note Offering.

421485.03

1    77.    Defendants' misrepresentations and omissions were made knowingly and with an

2  intent to deceive or defraud Plaintiffs as to the business plan of Organic Style and the intended

3  use of proceeds from the Convertible Note Offering.

4    78.    Artemis IV reasonably relied upon Defendants' misrepresentations alleged herein

5  in making its decision to purchase the Convertible Notes.

6    79.    As a direct result of the misrepresentations alleged herein, Artemis IV has been

7  damaged in an amount not less than approximately $10,000,000 plus accrued interest.

8    **SEVENTH CLAIM FOR RELIEF**
    **Conspiracy (Fraud and Deceit)**

9    **(All Defendants)**

10    80.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

11  allegations in Paragraphs 1 through 79 above.

12    81.    Upon information and belief, Defendants entered into a conspiracy whereby they

13  knowingly and with an intent to defraud or deceive, induced Artemis IV to purchase Convertible

14  Notes of Organic Style by misrepresenting the business plan of Organic Style and

15  misrepresenting the intended use of proceeds from the Convertible Note Offering.

16    82.    Artemis IV reasonably relied upon the misrepresentations and omissions alleged

17  herein in making its decision to purchase the Convertible Notes.

18    83.    As a direct result of the misrepresentations and omissions alleged herein,

19  Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

20  accrued interest.

21    **EIGHTH CLAIM FOR RELIEF**
    **Aiding and Abetting (Fraud and Deceit)**

22    **(All Defendants)**

23    84.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

24  allegations in Paragraphs 1 through 83 above.

25    85.    Upon information and belief, Defendants knew of the conduct constituting fraud

26  and deceit upon Artemis IV and gave substantial assistance and encouragement in committing

27  such fraud and deceit.  At a minimum, Defendant Organic Bouquet and Director Defendants

28  approved or acquiesced in the material misrepresentations and omissions to Artemis IV and in

421485.03

1    the wrongful transfers of the assets of Organic Style.

2        86.    Artemis IV reasonably relied upon the misrepresentations and omissions alleged

3    herein in making its decision to purchase the Convertible Notes.

4        87.    As a direct result of the misrepresentations and omissions alleged herein,

5    Artemis IV has been damaged in an amount not less than approximately $10,000,000, plus

6    accrued interest.

7                           **NINTH CLAIM FOR RELIEF**
           **Fraudulent Conveyance—Cal. Civ. Code § 3439.04**

8                           **(All Defendants)**

9        88.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

10    allegations in Paragraphs 1 through 87 above.

11        89.    Defendants improperly transferred or caused the transfer of Organic Style funds

12    to Organic Bouquet with actual intent to hinder, delay, or defraud Plaintiffs.

13                           **TENTH CLAIM FOR RELIEF**
           **Intentional Interference With a Contract**

14                  **(Defendant Organic Bouquet)**

15        90.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

16    allegations in Paragraphs 1 through 89 above.

17        91.    A contractual relationship existed between Artemis IV and Defendant Organic

18    Style, as embodied in the Convertible Notes and the Subscription Letter.

19        92.    Director Defendants knew of the existence of this contractual relationship

20    between Organic Style and Artemis IV.

21        93.    Defendant Organic Bouquet caused Organic Style to transfer assets to Organic

22    Bouquet in breach of Organic Style's contractual obligations to Artemis IV.

23        94.    Defendant Organic Bouquet and Director Defendants either intended to prevent

24    performance of the contract or knew that prevention of performance was certain or substantially

25    certain to occur as a result of their conduct.

26        95.    As a direct and proximate result of the conduct of Defendant Organic Bouquet

27    and Director Defendants intentionally causing the prevention of the contractual relationship

28

421485.03

1    between Organic Style and Artemis IV, Artemis IV has been damaged in an amount not less than

2    approximately $10,000,000, plus accrued interest.

3    ELEVENTH CLAIM FOR RELIEF
     Unjust Enrichment
4    (Defendant Organic Bouquet)

5    96.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

6    allegations in Paragraphs 1 through 95 above.

7    97.    Defendant Organic Bouquet wrongly received Organic Style assets via the

8    fraudulent conduct of Defendants, and has been unjustly enriched thereby.

9    98.    Defendant Organic Bouquet should be required to reimburse Artemis IV for the

10   amount of any Organic Style assets it wrongfully received.

11   TWELFTH CLAIM FOR RELIEF
     An Accounting
12   (Defendants Organic Style and Organic Bouquet)

13

14   99.    Artemis IV re-alleges and incorporates as though fully set forth herein all of its

15   allegation in Paragraphs 1 through 98 above.

16   100.    As a direct and proximate result of the conduct of Defendants, Artemis IV has

17   been damaged in an amount not less than approximately $10,000,000, plus accrued interest.

18   101.    An accounting will show the amount of liability owed by Defendants to

19   Artemis IV.

20   102.    An accounting is necessary to determine the amount of liability owed by

21   Defendants to Artemis IV.

22   103.    Artemis IV is entitled to an accounting by Defendants as to the amount, equaling

23   not less than approximately $10,000,000, plus accrued interest, that it has been damaged by

24   Defendants' conduct.

25   PRAYER FOR RELIEF

26   WHEREFORE, Plaintiff Artemis IV respectfully demands judgment against Defendants,

27   jointly and severally, awarding Artemis IV:

28   1.    Compensatory damages in an amount not less than $10,000,000 to be determined

17

421485.03

1 | at trial;

2 | 2.    Punitive damages in an amount not less than $30,000,000 to be determined at

3 | trial;

4 | 3.    Consequential damages in an amount to be proved at trial;

5 | 4.    Rescission of the Subscription Agreements;

6 | 5.    An accounting of the finances of Defendants Organic Style and Organic Bouquet;

7 | 6.    Costs, fees, and interest, as provided by law;

8 | 7.    Attorneys' fees, as provided by law;

9 | 8.    Such other and further relief as the Court deems just and fair.

11 | Dated:  July 23, 2008

KEKER & VAN NEST, LLP

By: _____
ELLIOT R. PETERS
JENNIFER A. HUBER

—and—

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
MARTIN FLUMENBAUM
MARC FALCONE

Attorneys for Plaintiff
ARTEMIS IV, LLC

18
COMPLAINT
CASE NO. _____

421485.03

## DEMAND FOR JURY TRIAL

Plaintiff ARTEMIS IV, LLC hereby demands a jury trial in the above matter.

Dated:  July 23, 2008

KEKER & VAN NEST, LLP

By: _____
ELLIOT R. PETERS
JENNIFER A. HUBER

—and—

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
MARTIN FLUMENBAUM
MARC FALCONE

Attorneys for Plaintiff
ARTEMIS IV, LLC

421485.03

# EXHIBIT 1

**Artemis IV LLC**
**P.O. Box 809**
**Katonah, New York 10536**

July 23, 2008

Organic Style Limited
75 Cannon Street
London
EC4N 5BN
United Kingdom

Organic Style Directors

Gerald Prolman
119 Emerson Avenue
Novato, California 94949
United States of America
gprolman@cs.com

Christopher Grey Powell
11 Loros Drive
Saint George Telford
SHROPSHIRE TF2 9UE
Great Britain
Chris@OrganicBouquet.com

Adrian David Presland Bellamy
233 West Santa Inez Avenue
Hillsborough, California 94010
Untied States of America
adpbellamy@msn.com

John Brady
55 Antrim Road
Hancock, New Hampshire 03449
United States of America
jabrady@planthealthcare.com

Gentlemen:

Re: <u>Redemption of 2007 Convertible Notes and 2008 Convertible Notes</u>

As you know, on September 24, 2007 and October 28, 2007 Artemis IV LLC ("<u>Artemis</u>") invested £1,500,000 and £1,000,000, respectively, in Organic Style Limited's (the "Company") Convertible Loan Note and Warrant Instrument to Raise up to £5,000,000 (collectively, the "<u>2007 Convertible Notes</u>"). On February 19, 2008 and March 17, 2008, Artemis invested £500,000 and £1,750,000, respectively in the Company's Convertible Loan Note and Warrant Instrument to Raise up to £7,500,000 (the "<u>2008 Convertible Notes</u>"), and together with the 2007 Convertible Note, the "<u>Notes</u>"). Artemis is the "Investor Majority" under both the 2007 Convertible Notes and the 2008 Convertible Notes, holding over 85% of the nominal amount of Notes issued under each such instrument. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the applicable Notes.

The Investor Majority has determined and agreed that the value of the Company's assets is and has been seriously reduced and threatened, including as a result of the breach by the Company of the terms of the Notes as described below. Accordingly, pursuant to paragraph 9.1 of Schedule 2 of the Notes the Company is now obligated to immediately redeem all of the Notes and pay to the holders of the Notes all principal and accrued interest thereon. Under paragraph 4 of Schedule 2 of the Notes, interest shall continue to accrue on any such unpaid amounts at 30-day LIBOR plus 6% until paid in full.

As we brought to your attention with our letter dated April 2, 2008, the proceeds were not, in fact, used as required by the Notes. The Company therefore breached the obligation in clause 5 of the Notes requiring that all proceeds be used "to fund the Company's working capital, including with limitation, transaction expenses." This constituted a willful and material breach of the Notes which still has not been remedied despite Artemis' good faith attempts to work with the Company's management for months to find an acceptable solution. Accordingly, without prejudice to all rights under paragraph 9.1 of Schedule 2 of the Notes and without limiting the effectiveness of the Investor Majority's determination as described above, this letter also serves as notice pursuant to paragraph 8 of Schedule 2 of the Notes that the Majority Investor hereby elects to exercise its right to have the Notes redeemed, as a result of this material breach by the Company. Such redemption shall be required to occur at the earliest possible date permitted in accordance with the terms of the Notes.

Please send all amounts due to Artemis in such redemption by wire transfer to the following account:

FIRST REPUBLIC BANK

BRANCH 79

ABA NO. 321081669

2

ACCT NAME: ARTEMIS IV, LLC

ACCT NO. 97910004906

Artemis expressly reserves all of its rights and remedies at law or in equity.

Sincerely,

ARTEMIS IV LLC

By: _____
    Kevin R. Brine
    Member Manager

cc: Martin Flumenbaum, Esq.

3

1   KEKER & VAN NEST, LLP
    ELLIOT R. PETERS - #158708
2   JENNIFER A. HUBER - #250143
    710 Sansome Street
3   San Francisco, California 94111-1704
    Telephone: (415) 391-5400
4   Facsimile: (415) 397-7188
    epeters@kvn.com
5   jhuber@kvn.com

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
    MARTIN FLUMENBAUM, *pro hac vice* pending
7   MARC FALCONE, *pro hac vice* pending
    1285 Avenue of the Americas
8   New York, New York 10019
    Tel: (212) 373-3000
9   Fax: (212) 757-3990

10  Attorneys for Plaintiff
    ARTEMIS IV, LLC

11

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16                                  CV 08          3528

17  ARTEMIS IV, LLC,
                                    Case No.
18                      Plaintiff,
                                    PLAINTIFF ARTEMIS IV, LLC'S
19      v.                          DISCLOSURE STATEMENT
                                    PURSUANT TO FED. R. CIV. P. 7.1 &
20  ORGANIC BOUQUET, INC., ORGANIC  CIVIL L.R. 3-16
    STYLE, LTD., GERALD PROLMAN,
21  CHRISTOPHER GREY POWELL, ADRIAN
    DAVID PRESLAND BELLAMY, JOHN
22  BRADY, and JOHN ROBERT NEVADO,

23                      Defendants.

24

25

26

27

28

421569.01

1    Pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-16, the

2  undersigned certifies that the following persons have a financial interest in Artemis IV, LLC:

3  Kevin R. Brine and Jessica E. Smith.

4    At this time, the undersigned is not aware of any other interested individuals or entities,

5  other than the parties themselves, to have a financial interest in the subject matter in controversy

6  or in a party to the proceeding, or a non-financial interest that could be substantially affected by

7  the outcome of this proceeding, but reserves the right to file a supplemental statement upon any

8  change in the information that this statement requires.

9

10  DATED:  July 23, 2008                    KEKER & VAN NEST, LLP

11

12                              By: _____

13                                  ELLIOT R. PETERS
                                    JENNIFER A. HUBER
14
                                    —and—
15
                                    PAUL, WEISS, RIFKIND, WHARTON
16                                  & GARRISON LLP
                                    MARTIN FLUMENBAUM
17                                  MARC FALCONE

18
                                    Attorneys for Plaintiff
19                                  ARTEMIS IV, LLC

20

21

22

23

24

25

26

27

28

CORPORATE DISCLOSURE STATEMENT OF PLAINTIFF ARTEMIS IV, LLC
CASE NO. _____

421569.01

ORIGINAL
FILED

08 JUL 23 PM 12: 37

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  KEKER & VAN NEST, LLP
   ELLIOT R. PETERS - #158708
2  JENNIFER A. HUBER - #250143
   710 Sansome Street
3  San Francisco, CA  94111-1704
   Telephone: (415) 391-5400
4  Facsimile: (415) 397-7188
   epeters@kvn.com
5  jhuber@kvn.com

6  PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
   MARTIN FLUMENBAUM, *pro hac vice* pending
7  MARC FALCONE, *pro hac vice* pending
   1285 Avenue of the Americas
8  New York, New York 10019
   Tel: (212) 373-3000
9  Fax: (212) 757-3990

10 Attorneys for Plaintiff
   ARTEMIS IV, LLC

11

12

13                UNITED STATES DISTRICT COURT                      JL

14              NORTHERN DISTRICT OF CALIFORNIA

15                    CV 08          3528

16

17 ARTEMIS IV, LLC,                      Case No.

18                          Plaintiff,   **APPLICATION OF MARTIN
                                          FLUMENBAUM TO APPEAR AS**
19        v.                              **COUNSEL *PRO HAC VICE* ON BEHALF
                                          OF PLAINTIFF ARTEMIS IV, LLC**
20 ORGANIC BOUQUET, INC., ORGANIC
   STYLE, LTD., GERALD PROLMAN,
21 CHRISTOPHER GREY POWELL, ADRIAN
   DAVID PRESLAND BELLAMY, JOHN
22 BRADY, and JOHN ROBERT NEVADO,

23                          Defendants.

24

25

26

27

28

APPLICATION OF MARTIN FLUMENBAUM TO APPEAR AS COUNSEL PRO HAC VICE ON BEHALF OF
PLAINTIFF ARTEMIS IV, LLC
CASE NO. _____

1     I, MARTIN FLUMENBAUM, declare and state as follows:

2    1.  I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP,

3  located at 1285 Avenue of the Americas, New York, NY 10019, and represent Artemis IV, LLC

4  in the above-captioned matter.  I have knowledge of the facts set forth herein, and if called to

5  testify as a witness thereto could do so competently under oath.

6    2.  I am an active member in good standing of the New York State Bar.  I was admitted

7  to the New York State bar in 1975.  I am also a member of the bar of the District of Columbia,

8  and was admitted in 1985.

9    3.  I agree to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4,

10  and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of

11  this Court.

12    4.  Elliot Peters and Jennifer Huber of Keker & Van Nest LLP are designated as co-

13  counsel.  They are members of this Court in good standing and maintain an office at 710

14  Sansome Street, San Francisco, California 94111.

15     I declare under penalty of perjury under the laws of the United States of America that the

16  foregoing is true and correct.  Executed on this 21st day of July, 2008 in New York, New York.

17

18

19

20         MARTIN FLUMENBAUM

21

22

23

24

25

26

27

28

APPLICATION OF MARTIN FLUMENBAUM TO APPEAR AS COUNSEL PRO HAC VICE ON BEHALF OF
PLAINTIFF ARTEMIS IV, LLC
CASE NO. _____

1  KEKER & VAN NEST, LLP
   ELLIOT R. PETERS - #158708
2  JENNIFER A. HUBER - #250143
   710 Sansome Street
3  San Francisco, California 94111-1704
   Telephone: (415) 391-5400
4  Facsimile: (415) 397-7188
   epeters@kvn.com
5  jhuber@kvn.com

6  PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
   MARTIN FLUMENBAUM, *pro hac vice* pending
7  MARC FALCONE, *pro hac vice* pending
   1285 Avenue of the Americas
8  New York, New York 10019
   Tel: (212) 373-3000
9  Fax: (212) 757-3990

10 Attorneys for Plaintiff
   ARTEMIS IV, LLC

11

12

13              UNITED STATES DISTRICT COURT                    **JL**

14            NORTHERN DISTRICT OF CALIFORNIA

15                  CV 08        3528

16

17 ARTEMIS IV, LLC,                        Case No.

                          Plaintiff,        *[PROPOSED]* ORDER GRANTING
18                                          APPLICATION OF MARTIN
                                            FLUMENBAUM TO APPEAR AS
19      v.                                  COUNSEL *PRO HAC VICE* ON BEHALF
                                            OF PLAINTIFF ARTEMIS IV, LLC
   ORGANIC BOUQUET, INC., ORGANIC
20 STYLE, LTD., GERALD PROLMAN,
   CHRISTOPHER GREY POWELL, ADRIAN
21 DAVID PRESLAND BELLAMY, JOHN
   BRADY, and JOHN ROBERT NEVADO,
22
                          Defendants.
23

24

25

26

27

28

421499.01

1    Martin Flumenbaum, an active member in good standing of the bar of New York, whose

2  business address and telephone number is Paul, Weiss, Rifkind, Wharton & Garrison, LLP,

3  located at 1285 Avenue of the Americas, New York, New York 10019, (212) 373-3000, having

4  applied in the above-entitled action for admission to practice in the Northern District of

5  California on a *pro hac vice* basis, representing Plaintiff Artemis IV, LLC;

6    IT IS HEREBY ORDERED THAT the application is granted, subject to the terms and

7  conditions of Civil L.R. 11-3.  All papers filed by the attorney must indicate appearance *pro hac*

8  *vice*.  Service of papers upon and communication with co-counsel designated in the application

9  will constitute notice to the party.  All future filings in this action are subject to the requirements

10  contained in General Order No. 45, Electronic Case Filing.

11

12

13  DATED: _____, 2008

14                                                                      HON.
                                                                        UNITED STATES DISTRICT COURT
15                                                                      NORTHERN DISTRICT OF
                                                                        CALIFORNIA
16

17

18

19

20

21

22

23

24

25

26

27

28

1

*[PROPOSED]* ORDER GRANTING APPLICATION OF MARTIN FLUMENBAUM TO APPEAR AS
COUNSEL *PRO HAC VICE* ON BEHALF OF PLAINTIFF ARTEMIS IV, LLC
CASE NO. _____

421499.01

1   KEKER & VAN NEST, LLP
    ELLIOT R. PETERS - #158708
2   JENNIFER A. HUBER - #250143
    710 Sansome Street
3   San Francisco, CA  94111-1704
    Telephone: (415) 391-5400
4   Facsimile: (415) 397-7188
    epeters@kvn.com
5   jhuber@kvn.com

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
    MARC FALCONE, *pro hac vice* pending
7   1285 Avenue of the Americas
    New York, New York 10019
8   Tel: (212) 373-3000
    Fax: (212) 757-3990
9
    Attorneys for Plaintff
10  ARTEMIS IV, LLC

11

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14                                              **JL**

15

16                                  Case No. **08      3528**

17  ARTEMIS IV, LLC,

                        Plaintiff,      **APPLICATION OF MARC FALCONE TO**
18                                      **APPEAR AS COUNSEL *PRO HAC VICE***
                                        **ON BEHALF OF PLAINTIFF ARTEMIS**
19       v.                             **IV, LLC**

20  ORGANIC BOUQUET, INC., ORGANIC
    STYLE, LTD., GERALD PROLMAN,
21  CHRISTOPHER GREY POWELL, ADRIAN
    DAVID PRESLAND BELLAMY, JOHN
22  BRADY, and JOHN ROBERT NEVADO,

23                        Defendants.

24

25

26

27

28
    ───────────────────────────────────────────────
    APPLICATION OF MARC FALCONE TO APPEAR AS COUNSEL PRO HAC VICE ON BEHALF OF
                      PLAINTIFF ARTEMIS IV, LLC
                          CASE NO.

I, MARC FALCONE, declare and state as follows:

1. I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP, located at 1285 Avenue of the Americas, New York, NY 10019, and represent Artemis IV, LLC in the above-captioned matter. I have knowledge of the facts set forth herein, and if called to testify as a witness thereto could do so competently under oath.

2. I am an active member in good standing of the New York State bar. I was admitted to the New York State bar in 1996.

3. I agree to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of this Court.

4. Elliot Peters and Jennifer Huber of Keker & Van Nest LLP are designated as co-counsel. They are members of this Court in good standing and maintain an office at 710 Sansome Street, San Francisco, California 94111.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 23rd day of July, 2008 in New York, New York.

MARC FALCONE

1

1   KEKER & VAN NEST, LLP
    ELLIOT R. PETERS - #158708
2   JENNIFER A. HUBER - #250143
    710 Sansome Street
3   San Francisco, California  94111-1704
    Telephone: (415) 391-5400
4   Facsimile: (415) 397-7188
    epeters@kvn.com
5   jhuber@kvn.com

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
    MARTIN FLUMENBAUM, *pro hac vice* pending
7   MARC FALCONE, *pro hac vice* pending
    1285 Avenue of the Americas
8   New York, New York 10019
    Tel: (212) 373-3000
9   Fax: (212) 757-3990

10  Attorneys for Plaintiff
    ARTEMIS IV, LLC

11

12

13                 UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                   CV  08         3528

16

17  ARTEMIS IV, LLC,                    Case No.

                            Plaintiff,  *[PROPOSED]* ORDER GRANTING
18                                       APPLICATION OF MARC FALCONE TO
                                         APPEAR AS COUNSEL *PRO HAC VICE*
19      v.                               ON BEHALF OF PLAINTIFF
                                         ARTEMIS IV, LLC
20  ORGANIC BOUQUET, INC., ORGANIC
    STYLE, LTD., GERALD PROLMAN,
21  CHRISTOPHER GREY POWELL, ADRIAN
    DAVID PRESLAND BELLAMY, JOHN
22  BRADY, and JOHN ROBERT NEVADO,

                            Defendants.
23

24

25

26

27

28

*[PROPOSED]* ORDER GRANTING APPLICATION OF MARC FALCONE TO APPEAR AS COUNSEL *PRO HAC VICE* ON BEHALF OF PLAINTIFF ARTEMIS IV, LLC
CASE NO. _____

421501.01

1    Marc Falcone, an active member in good standing of the bar of New York, whose

2  business address and telephone number is Paul, Weiss, Rifkind, Wharton & Garrison, LLP,

3  located at 1285 Avenue of the Americas, New York, New York 10019, (212) 373-3000, having

4  applied in the above-entitled action for admission to practice in the Northern District of

5  California on a *pro hac vice* basis, representing Artemis IV, LLC;

6    IT IS HEREBY ORDERED THAT the application is granted, subject to the terms and

7  conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate appearance *pro hac*

8  *vice*. Service of papers upon and communication with co-counsel designated in the application

9  will constitute notice to the party. All future filings in this action are subject to the requirements

10  contained in General Order No. 45, Electronic Case Filing.

11

12

13  DATED: _____, 2008

                                        _____
14                                        HON.
                                          UNITED STATES DISTRICT COURT
15                                        NORTHERN DISTRICT OF
                                          CALIFORNIA
16

17

18

19

20

21

22

23

24

25

26

27

28

                                          1
─────────────────────────────────────────────────────────
*[PROPOSED]* ORDER GRANTING APPLICATION OF MARC FALCONE TO APPEAR AS COUNSEL *PRO
HAC VICE* ON BEHALF OF PLAINTIFF ARTEMIS IV, LLC
                            CASE NO. _____

421501.01

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ARTEMIS IV, LLC,

          Plaintiff (s),

    v.

ORGANIC BOUQUET INC,

          Defendant(s).

No. C 08-03528 JL

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

     IT IS HEREBY ORDERED that this action is assigned to the Honorable James Larson. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

     IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

     IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California," additional copies of which can be downloaded from the following Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 7/23/2008 | Complaint filed | |
| 10/8/2008 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |

| | | |
|---|---|---|
| 10/22/2008 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a)(1) <br> Civil L.R. 16-9 |
| 10/29/2008 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Ctrm F,15th Floor,SF at 10:30 AM | Civil L.R. 16-10 |

Chief Magistrate Judge James Larson
San Francisco
Courtroom F, 15th Floor

(415) 522-2112

James Larson, Chief Magistrate Judge

Wings Hom, Courtroom Deputy (415) 522-2046

Venice Thomas, Secretary (415) 522-2112

Kathleen Campbell, Career Law Clerk


NOTICES

1. Civil Law & Motion is heard on Wednesdays at 9:30 a.m. Counsel need not reserve a hearing date for civil matters, but should confirm the judge's availability in the legal newspapers and on the district court web site, www.cand.uscourts.gov. Motions are governed by the Civil Local Rules and the Federal Rules of Civil Procedure.

2. Criminal motions are scheduled with the courtroom deputy for any Thursday morning at 11:00 a.m. when the judge is available.  Motions are governed by the Federal Rules of Criminal Procedure and the Criminal Local Rules.

3. Case Management Conferences are held on Wednesdays at 10:30 a.m.

4. Pretrial Conferences are held Wednesdays at 11:00 a.m.

5. The Magistrate Judge's Settlement Conference Order is available on the Court web site or from the Clerk's Office.

6. Parties with questions regarding scheduling of settlement conferences should contact Judge Larson's Judicial Assistant, Venice Thomas, at (415) 522-2112. All other scheduling questions should be addressed to Judge Larson's Courtroom Deputy, Wings Hom, at (415) 522-2046.

7.     Pretrial motion papers, including discovery motions, shall be filed in accordance with Civil Local Rule 7-2. Pursuant to Civil Local Rule 5-2(a), any papers filed in connection with any motion referred to Magistrate Judge Larson by a district judge must

be filed in the Clerk's Office at the division where the chambers of the district judge is located, whether Oakland, San Francisco or San Jose. Pursuant to Civil Local Rule 5-2(b), the courtesy copies of papers filed in connection with any motion assigned to Magistrate Judge Larson, including those in cases where the assigned district judge sits in Oakland or San Jose, must be delivered to the Clerk's Office or to Magistrate Judge Larson's chambers, at 450 Golden Gate Avenue, San Francisco.

8. Discovery disputes in cases referred by the district court are handled either under Option 1 or Option 2, depending on when they were filed. Discovery disputes in this Court's consent cases are all handled according to Option 2.

    a.    Option 1: Motions noticed for a hearing before the district court and then referred to this court will be re-scheduled on Magistrate Judge Larson's Law and Motion calendar. Parties will be notified in writing.

    b.    Option 2: In disputes which arise after the case has been referred, but before being brought before the district judge on motion, the parties shall follow this procedure:

The parties shall meet and confer in person, or, if counsel are located outside the Bay Area, by telephone, to attempt to resolve their dispute informally. A mere exchange of letters, telephone calls, or facsimile transmissions does not satisfy the requirement to meet and confer. Counsel shall immediately advise this Court in writing of the outcome and what, if any, parts of their dispute will be submitted to the Court for resolution.

If, after a good faith effort, the parties have not resolved their dispute, they shall prepare a concise joint statement of 5 pages or less, stating the nature and status of their dispute. Parties shall not file affidavits or exhibits. If a joint statement is not possible, each side may submit a brief individual statement of 2 pages or less. **The joint statement or individual statements shall be filed or e-filed, if in an e-filing case, and courtesy copies submitted as provided by the Civil Local Rules.** The Court will advise the parties regarding the need, if any, for more formal briefing or a hearing, pursuant to Civil Local Rule 7-1(b).

    c.    Telephone conferences in discovery disputes are not encouraged but will be arranged at the court's discretion and are usually reserved for questions arising in the course of a deposition or other emergency.

9.    Any party seeking an award of attorney fees or other expenses as sanctions in connection with a discovery dispute shall file a separate motion as required by Civil Local Rule 37-1(e).

10.    In cases where a party wishes to file a document under seal, that party shall first file a written request for a sealing order setting forth good cause and accompanied by a proposed order, as provided by Civil Local Rule 79-5.

11.     In all "E-Filing" cases when filing papers in connection with any motion for determination by the judge, the parties shall, in addition to filing papers electronically, lodge with chambers ONE printed copy of the papers by noon of the next court day following the day the papers are filed electronically. Do not submit multiple Chambers Copies. These printed copies shall be marked "Chambers Copy" and shall be submitted to the Clerk's Office, in an envelope clearly marked with the judge's name, case number and "E-Filing Chambers Copy." Parties shall not manually file a paper copy of any document with the Clerk's Office that has already been filed electronically.

12.     Motions for summary judgment in cases assigned to Magistrate Judge Larson for trial shall be accompanied by a statement of the material facts not in dispute supported by citations to admissible evidence. The parties shall file a joint statement of undisputed facts wherever possible. If the parties are unable to reach complete agreement after meeting and conferring, they shall file a joint statement of the undisputed facts about which they do agree. Any party may then file a separate statement of the additional facts which the party contends are undisputed.

G:\JLALL\TRIAL\standingord-2008.wpd

## STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

### CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.    Jurisdiction and Service:  The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.    Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.    Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.    Motions: All prior and pending motions, their current status, and any anticipated motions.

5.    Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.    Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.    Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.    Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.    Class Actions: If a class action, a proposal for how and when the class will be certified.

10.    Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.    Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.    <u>Settlement and ADR:</u> Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.    <u>Consent to Magistrate Judge For All Purposes:</u> Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.    <u>Other References:</u> Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    <u>Narrowing of Issues:</u> Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.    <u>Expedited Schedule:</u> Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    <u>Scheduling:</u> Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.    <u>Trial:</u> Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.    <u>Disclosure of Non-party Interested Entities or Persons:</u> Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.    Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

CV 08    3528



# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. This means that you must (check off the boxes when done):

☐ 1) Serve this ECF Registration Information Handout on all parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

Each attorney representing a party must also:

☐ 2) Register to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again; your registration is valid for life, on all ECF cases in this district.

☐ 3) Email (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format, within ten business days following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ 4) Access dockets and documents using PACER (Public Access to Court Electronic Records). If your firm already has a PACER account, please note that it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, go to: http://pacer.psc.uscourts.gov or call (800) 676-6856.

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) [CIV] AND 49(b) [CRIM] OF THE FEDERAL RULES OF CIVIL PROCEDURE.

All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form unless prior leave to file electronically is obtained from the assigned judge.

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: http://ecf.cand.uscourts.gov



## Submitting Initiating Documents

PDF versions of all the initiating documents originally submitted to the court (Complaint, Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the subject line of all relevant emails to the court. You do not need to wait for your registration to email those documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

## Converting Documents to PDF

Conversion of a word processing document to a PDF file is required before any document may be submitted to the court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov** and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and **the type of document(s)** you are sending and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-0999 before the Honorable Charles R. Breyer.

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-0999 CRB Complaint |
| Complaint and Notice of Related Cases | 03-0999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Retaining Order | 03-0999 CRB Complaint, TRO |

Questions:
Almost all directions can be answered in our FAQ. If
http://ecf.cand.uscourts.gov, please check there first.

You may also email the ECF Help Desk at the helpdesk@cand.uscourts.gov or
call the toll free ECF Help Desk number at (866) 638-7829.

The ECF Help Desk is staffed Monday through Friday, from
9:00am to 4:00pm Pacific time, excluding court holidays.



United States District Court

Northern District of California

# Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California

# Table of Contents

A Message from the Chief Judge of the
U.S. District Court ................................................... 3

How Consent Jurisdiction Works ............................ 5

Potential Benefits of Consenting To Magistrate Judge
Jurisdiction................................................................ 6

Magistrate Judge Brazil ........................................... 8

Magistrate Judge Chen............................................ 9

Magistrate Judge James......................................... 10

Magistrate Judge Laporte ...................................... 11

Magistrate Judge Larson ....................................... 12

Magistrate Judge Lloyd.......................................... 13

Magistrate Judge Seeborg...................................... 14

Magistrate Judge Spero.......................................... 15

Magistrate Judge Trumbull ..................................... 16

Magistrate Judge Vadas ........................................ 17

Magistrate Judge Zimmerman ............................... 18

## A Message from the Chief Judge
## of the U.S. District Court

As you embark on civil litigation in the United States District Court for the Northern District of California—whether as a party to a lawsuit or as an attorney—I encourage you to familiarize yourself with the range of services provided by the court's magistrate judges and especially to consider consenting to have a magistrate judge handle all aspects of your case, up to and including dispositive motions, jury or court trial and the entry of judgment.

The Northern District is one of the few federal trial courts in the country to assign a wide range of civil cases directly to magistrate judges upon filing. As a consequence, the magistrate judges have direct experience with nearly all types of civil matters filed in our court. Because our court is very busy, agreeing to proceed before a magistrate judge often means that the case will be resolved more quickly than if the case remained before a district judge. While consent is customarily given soon after a case is filed, parties may consent to have a magistrate judge preside over their case at any point in the proceedings.

Every magistrate judge in the Northern District underwent a highly competitive selection process and had years of litigation experience before being appointed to the bench. As the biographies that follow demonstrate, each is active in law school teaching and continuing legal education for attorneys. Many have been appointed to important committees within the federal courts.

3

Most have completed at least one term as a magistrate judge and have been reappointed based on detailed, confidential feedback from the bar establishing satisfaction with their work—including their work on dispositive motions and trials. Combined, the Northern District's magistrate judges bring a total of 125 years of federal judicial experience to their work at our court. Each is equipped to handle the full range of issues presented to our court.

Vaughn R Walker

Chief Judge

4

## HOW CONSENT JURISDICTION WORKS

Since 1979, the parties in a civil action have had the option of consenting to have all aspects of their case, including trial, handled by a United States magistrate judge.[1] The Northern District of California has been one of the leaders nationwide in implementing this process. When a civil action is filed in this District, ordinarily it will be randomly assigned for all purposes to either a district judge or a magistrate judge.[2] By local practice, a magistrate judge is assigned a civil caseload approximately 30% that of a district judge's civil caseload, in recognition of a magistrate judge's other duties, such as presiding over settlement conferences. Each magistrate judge typically has about 100 consent cases. In 2007, the magistrate judges completed handling almost 800 civil cases in which they had exercised consent jurisdiction. When a case is initially assigned to a magistrate judge, the plaintiff is given a form to use to either consent to or decline magistrate judge jurisdiction.[3] Plaintiff is also required to serve that form on each defendant. Each party should make a decision regarding magistrate judge jurisdiction as soon as possible, and in any event prior to the case management conference which is generally held about 100 days after the case is filed. Civil L.R. 73-1.

If all parties consent to magistrate jurisdiction, then the magistrate judge to whom the case is assigned will preside over all aspects of the case, through trial. F.R.Civ.P. 73(b). An appeal from the magistrate judge's rulings is made to the appropriate appellate court exactly as if the rulings were from a district judge. F.R.Civ.P. 73(c).

5

A civil case initially assigned to a district judge may also be reassigned to a magistrate judge if all parties consent to magistrate judge jurisdiction. The parties should expect the district judge to ask at the case management conference whether they have considered consenting to a magistrate judge jurisdiction.

Each magistrate judge has an assigned courtroom designed to accommodate civil jury trials. Each magistrate judge has at least one law clerk. Many have a second law clerk in lieu of a secretary.

Magistrate judges are fully integrated into the court's administration, serving on all court committees and chairing some of them.

## POTENTIAL BENEFITS OF CONSENTING TO MAGISTRATE JUDGE JURISDICTION

This District has always recruited experienced trial attorneys of the highest caliber who undergo a merit selection process before being appointed as a magistrate judge. Because of their diverse experiences while in practice and while presiding over civil matters including trials, this District's magistrate judges are able to preside over all types of civil litigation. The biographies of the current magistrate judges are set forth below.

Parties that consent to have their case tried before a magistrate judge will receive a date certain for trial. The right to a speedy trial in felony criminal matters requires district judges to give statutory priority to trying those cases, which can sometimes require that civil trial dates be moved. Unlike district judges, magistrate judges do not preside over felony criminal matters.

The historical experience in this District has been that our magistrate judges have virtually always met their scheduled trial dates. Because magistrate judges' trial dockets are generally less crowded than those of district court judges, they are often able to schedule a trial within a year of the filing of the complaint.

### ENDNOTES

1) Federal Magistrate Act of 1979, 28 U.S.C § 636(c)(1). See also F.R.Civ.P. 73(b).

2) District Judges, sometimes called Article III Judges, are appointed by the President, confirmed with the advice and consent of the Senate and hold their position for life. Magistrate Judges are appointed by the District Judges of each district following a merit selection process and serve for a period of eight years, subject to reappointment.

3) If the case has been removed from state court, the form is given to the removing party, who is required to serve it on all other parties.

## WAYNE D. BRAZIL



Magistrate Judge Wayne Brazil was appointed in 1984. He has been the Northern District's ADR Magistrate Judge since the late 1980's. He has presided over jury and court trials in a wide range of civil and criminal cases, including patent, trade secrets, trademark, commercial contract, civil rights, employment, personal injury, maritime, and tax. He has hosted more than 1,500 settlement conferences and published opinions in intellectual property, insurance, civil rights, maritime law, privileges, work product, civil discovery, and case management.

After receiving a B.A. from Stanford, Judge Brazil got his Ph.D. and M.A. from Harvard and his J.D. from Boalt Hall. He practiced civil litigation at Farella, Braun & Martel from 1975-1977. He then became a law professor at the University of California, Hastings College of the Law and at the University of Missouri. He taught civil procedure, constitutional law, criminal procedure, and civil rights from 1978 to 1984. He has authored books on the use of special masters in complex litigation and on settling civil suits, some 30 articles in legal periodicals, and the chapters on Rules 16 and 37 of the Federal Rules of Civil Procedure in Moore's Federal Practice, 3d Ed. He has served on the committees on Civil Rules and Evidence of the Judicial Conference of the United States and on the Ninth Circuit's ADR Committee.

## EDWARD M. CHEN



Magistrate Judge Edward M. Chen was appointed in 2001. He has presided over civil and criminal bench and jury trials, as well as hosted more than 500 settlement conferences. A 1975 Order of the Coif graduate of the University of California Boalt Hall School of Law, he clerked for the Honorable Charles B. Renfrew in the Northern District of California and then clerked for the Honorable James R. Browning in the Ninth Circuit Court of Appeals.

Judge Chen worked as a litigation associate at Coblentz, Cahen, McCabe & Breyer, and then as staff counsel of the ACLU Foundation of Northern California. He served as an officer of the California Asian American Judges Association, and as a Master of the Edward J. McFetridge American Inn of Courts. Chief Judge Schroeder of the Ninth Circuit appointed him to the Ninth Circuit Task Force on Self-Represented Litigants, and then as the chair of the Ninth Circuit Implementation Committee on Self-Represented Litigants. He was also appointed chair of the Federal Courts Committee on the California Commission on Access to Justice. He has published cases on discovery, privileges, civil procedure, civil and constitutional rights, international human rights, and criminal procedure. He has also published articles in the California Law Review, Asian Law Journal, George Mason Law Review, and Hastings Communications and Entertainment Law Journal. He has given presentations on such subjects as electronic discovery, patent litigation, employment law, civil rights, national security and constitutional rights, discrimination, case management, alternative dispute resolution, and Asian American legal history. He has taught and lectured on mediation and case management in India and Malaysia. In 2007, he was voted Judge of the Year by the Barristers Club of San Francisco.

## MARIA-ELENA JAMES

Magistrate Judge Maria-Elena James was appointed in 1994. She has presided over numerous cases and conducted thousands of settlement conferences. Outside the courtroom, she teaches a number of classes at three Bay Area law schools: University of California Hastings, University of San Francisco, and Golden Gate University. She also co-created a course called *The Roles of Referees and Commissioners* and taught the course, along with another course, at the California Judicial Education and Research College.

A 1978 graduate of the University of San Francisco Law School, she served as director of the Small Claims Court Education Project in the Consumer Fraud Unit of the San Francisco District Attorney's Office. She went on to serve as a deputy public defender in San Francisco, staff attorney for the National Labor Relations Board, and Deputy City Attorney as well as supervising attorney in San Francisco. She then served as a Commissioner in the San Francisco Superior Court for six years. She volunteers as a mock trial judge for all grades of students and serves as a mentor to law students. Her speaking engagements include a 2006 panel on Comparative Racial Justice at the University of Paris, Nanterre and the Assemblee Nationale.

### ELIZABETH D. LAPORTE

 Magistrate Judge Elizabeth Laporte was appointed in 1998. She has presided over numerous civil cases through trial or other disposition, including patent, trademark, copyright, employment, civil rights and environmental cases. She also has conducted over 1000 settlement conferences, handled criminal matters, and resolved discovery disputes.

A 1982 graduate of Yale Law School and a Marshall Scholar, with an M.A. in Politics and Economics from Oxford, she clerked for the Honorable Marilyn Hall Patel in the Northern District of California. She was a partner at the boutique litigation firm of Turner & Brorby, and an Administrative Law Judge for the California Department of Insurance. In 1996, she began serving as Chief of Special Litigation for the San Francisco City Attorney's Office, and was named a Lawyer of the Year by *California Lawyer*. She has authored articles on patent litigation and settlement in the *Northern California ABTL [Association of Business Trial Lawyers] Report*, and has written on e-discovery. She regularly speaks on patent litigation, settlement, e-discovery, jury trials, and other topics. She is a past chair of the Magistrate Judge Executive Board of the Ninth Circuit, and a current member of the Jury Trial Improvement Committee of the Ninth Circuit Court of Appeals, the Sedona Conference Working Group on Electronic Document Retention and Production, the Executive Committee of the Litigation Section of the Bar Association of San Francisco, and the Board of Governors for the Northern California Chapter of the Association of Business Trial Lawyers.

11

## JAMES LARSON



Magistrate Judge James Larson was appointed in 1997.  He was appointed Chief Magistrate Judge in 2005 for a four year term.  He has presided over criminal and civil cases, handled discovery and conducted settlement conferences in a variety of subject areas, including intellectual property, antitrust, contracts, civil rights, employment, environmental, class actions and other statutory liability.  He has conducted more than 1,000 mediations and settlement conferences.

He received his undergraduate degree from Stanford University in 1965 and his J.D. from U.C.L.A. law school in 1968, where he was selected for the Moot Court Honors Program.  Thereafter he worked in a number of small firms in Los Angeles and the Bay Area, handling admiralty, personal injury, civil rights and criminal matters before founding the law firm of Larson and Weinberg in San Francisco, where he remained until 1990.  He then formed his own firm and worked on civil, criminal, trial and appellate cases.  He has taught civil trials and criminal pre-trial procedure and has participated for many years in the Intensive Trial Advocacy Program at Cardozo Law School in New York.

Judge Larson has chaired or served on numerous court committees and has appeared on panels of judges and attorneys discussing e-discovery issues, settlement techniques, punitive damages, and bad faith litigation.  In December, 2007, he and several other members of the court conducted a comprehensive mediation training program for the High Court Judges of Malaysia.

12

### HOWARD R. LLOYD



Magistrate Judge Howard R. Lloyd was appointed in 2002. He has presided over a variety of civil and criminal trials and has extensive discovery as well as case-dispositive law and motion experience. He has presided over hundreds of settlement conferences in a wide variety of civil cases.

Judge Lloyd earned his undergraduate degree at the College of William and Mary, graduating Phi Beta Kappa, and his law degree from the University of Michigan Law School. He then worked as a civil trial and appellate lawyer for 30 years with a prominent San Jose law firm and personally tried many cases and argued dozens of appeals. He practiced in all areas, but especially employment, intellectual property, and commercial law. He then worked for 2 years as an independent and full time arbitrator and mediator. While in private practice Judge Lloyd was selected for voluntary service as an Early Neutral Evaluator (N.D. CA), mediator (California Court of Appeals), and Settlement Judge Pro Tem (Santa Clara County Superior Court). He is a frequent presenter at continuing education courses for attorneys and currently teaches at Santa Clara University Law School.

## RICHARD SEEBORG

 Magistrate Judge Richard Seeborg was appointed in 2001. Since joining the Court, he has presided over numerous bench and jury trials and has conducted hundreds of settlement conferences on all manner of federal civil cases. Judge Seeborg received his B.A., *summa cum laude*, Phi Beta Kappa, from Yale College in 1978. He then went to Columbia University School of Law in 1981, where he was a Harlan Fiske Stone Scholar. Following graduation from law school he served as a law clerk to the Honorable Judge John H. Pratt, district court judge in Washington, D.C. In 1982, he joined Morrison & Foerster's San Francisco office in the litigation department, becoming a partner in 1987.

From 1991 to 1998, Judge Seeborg served as an Assistant U.S. Attorney for the Northern District of California in San Jose. In that capacity, he acted as lead prosecutor on a wide range of matters including complex white collar criminal cases. He re-joined Morrison & Foerster in March 1998, where he resumed a litigation practice in the fields of securities, intellectual property, and general commercial matters.

Judge Seeborg has been a member of the Adjunct Faculty at Santa Clara University School of Law where he has served as co-instructor for a course on Federal Criminal Litigation and has served as co-chair of the Federal Courts Committee of the Santa Clara County Bar Association and as a member of the Executive Committee of Magistrate Judges for the Ninth Circuit. At present, he is a member of the Working Group on Electronic Public Access for the United States Courts and a member the Ninth Circuit Jury Instructions Committee. He is a co-author of Federal Pretrial Civil Procedure in California, a four-volume treatise published by Lexis Nexis.

## JOSEPH C. SPERO



Magistrate Judge Joseph C. Spero was appointed in 1999. He has presided over criminal and civil trials in a variety of subject areas, including patent, employment, civil rights, commercial contract, trademark, and federal misdemeanor cases. He has participated in over 1000 settlement conferences. He serves as chairman of the court's Capital Habeas Committee, and as a member of the court's Technology and Practice Committees.

A 1981 graduate of Columbia University School of Law, he clerked for the United States Court of Appeals for the Ninth Circuit. He worked as an associate at Skadden, Arps, Slate, Meagher & Flom, and as associate then partner at Coblentz, Cahen, McCabe & Breyer (now Coblentz, Patch, Duffy & Bass). While in private practice, he trained as a mediator at Harvard Law School and served as a mediator in the Northern District's Alternative Dispute Resolution Program. He also served as a Judge Pro-Tem for the San Francisco County Superior Court. He served as pro bono counsel in a variety of cases, including federal capital habeas matters. As a result, he received the Thurgood Marshall Award from the Bar Association of the City of New York.

## PATRICIA V. TRUMBULL



Magistrate Judge Patricia V. Trumbull was appointed in 1987. She served as Chief Magistrate Judge from 2001 to 2005. She has presided over numerous civil and criminal trials and thousands of settlement conferences.

Judge Trumbull received her undergraduate degree from University of California Davis and her law degree. at the Georgetown University Law Center in Washington, D.C. While at Georgetown, she interned at the Department of Justice. After graduating, she spent two years as a law clerk to the Honorable Spencer Williams of the U.S. District Court of Northern California. Following the clerkship, she worked for 12 years as an Assistant Federal Public Defender. She has served on numerous court committees and participated in many panel discussions on a variety of litigation issues.

## NANDOR J. VADAS



Magistrate Judge Nandor J. Vadas, a part-time magistrate judge in Eureka, California was appointed in 2004. Although he maintains his chambers in Eureka, he frequently sits in San Francisco. As a magistrate judge he has presided over issues involving civil rights, employment discrimination, Indian law, Endangered Species Act violations, as well as criminal and civil settlement conferences.

Judge Vadas received his undergraduate degree at the University of California at Santa Cruz in 1974 and his law degree from the University of California, Hastings College of the Law in 1978. Following law school he was a state and federal prosecutor for twenty-one years, where he gained criminal jury trial and appellate experience. He also spent five years in family law and juvenile dependency. He also has experience as an instructor at the College of the Redwoods Police Academy.

He is a member of the Magistrate Judges' Advisory Committee to the Federal Judicial Conferences.

17

## BERNARD ZIMMERMAN

 Magistrate Judge Bernard Zimmerman was appointed in 1995. With party consent, he has presided over a wide range of civil cases, including patent, trademark and copyright cases, class actions, contract and employment cases and civil rights, personal injury and admiralty cases. He has presided over more than 30 civil and criminal jury and bench trials and more than 1,000 settlement conferences. He chairs the court's Technology Committee and serves on the Media and Education Committees.

A 1970 graduate of the University of Chicago Law School, he clerked for the Honorable Frederick J.R. Heebe in the Eastern District of Louisiana and then taught law at the Louisiana State University Law Center. Returning to California, he was an associate and then partner at Pillsbury Madison & Sutro where he had a general litigation practice focusing on media, banking, construction, insurance and business issues. In 1995, he served as Legal Consultant to the Third Constitutional Convention of the Commonwealth of the Northern Mariana Islands. For the past two years, he has taught Federal Pretrial Litigation at Hastings College of the Law. He is a master of the Intellectual Property Inn of Court and has participated in numerous panels addressing issues such as ADR, class actions and discovery.

18

Filed on behalf of the Plaintiff
Deponent: M A B Timerick
1st Affidavit of Deponent
Exhibits: "MABT1"
Sworn:  ⟶       August 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
CALIFORNIA

Case No. CV 08 3528

BETWEEN

ARTEMIS IV, LLC

Plaintiff

-and-

ORGANIC BOUQET, INC., ORGANIC STYLE,
LTD., GERALDN PROLMAN, CHRISTOPHER
GREY POWELL., ADRIAN DAVID PRESLAND
BELLAMY, JOHN BRADY, and JOHN ROBERT
NEVADO.

Respondents

## AFFIDAVIT OF SERVICE

Macfarlanes LLP
20 Curistor Street
London
EC4A 1LT

Tel: 020 7831 9222
Fax: 020 7831 9607
Ref: EFS/607662

Filed on Behalf of the Plaintiff